COMMONWEALTH vs. MARK A. BANISTER.

Berkshire. September 9, 1998. - October 6, 1998.

Present: WILKINS, C.J., ABRAMS, GREANEY, FRIED, & MARSHALL, JJ.

*Practice, Criminal,* Assistance of counsel, New trial, Fair trial, Jury and jurors, Capital case. *Constitutional Law,* Assistance of counsel. *Attorney at Law,* Conflict of interest. *Jury and Jurors.*

A criminal defendant convicted of murder in the first degree did not demonstrate that he was deprived of effective representation by his trial counsel by reason of their alleged failures to present the defendant's case [213-214], to seek suppression of his statements on a basis not supported by the facts [214-215], or to seek DNA testing or fingerprint testing to attempt to demonstrate that another had committed the crime [215].

A criminal defendant did not demonstrate that his trial counsel had a conflict of interest that adversely affected his representation arising from counsel's having represented a Commonwealth witness one year previously, where counsel had only discovered the possible conflict on the fifth day of trial while reviewing certified copies of convictions, where the defendant agreed after full disclosure to his counsel's continuing to represent him, and where, in any event, the conflict was tenuous; further, there was no error in the judge's handling of the matter. [215-216]

A criminal defendant did not demonstrate in connection with his motion for a new trial that police had violated his right to make a telephone call (G. L. c. 276, § 33A) after his arrest. [216-217]

There was no basis for a criminal defendant's claim that he was denied a fair trial by reason of a juror's alleged bias: the juror was an alternate and had not deliberated. [217]

The judge at a murder trial acted properly in denying the defendant's motion for a new trial without an evidentiary hearing, where no substantial issues were raised. [217]

There was no basis for this court to grant a defendant convicted of murder in the first degree any relief pursuant to G. L. c. 278, § 33E. [217]

INDICTMENTS found and returned in the Superior Court Department on October 12, 1990.

The cases were tried before *Daniel A. Ford*, J., and a motion for a new trial, filed on May 5, 1997, and other posttrial motions were considered by him.

*Lawrence Rizman* for the defendant.

*Anne M. Kendall,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant of murder in the first degree (on each of the theories of deliberate premeditation, extreme atrocity or cruelty, and felony-murder), and of other crimes related to the murder. The trial judge considered and denied the defendant's motion for a new trial and several related posttrial motions.[1] Represented by new counsel, the defendant has appealed. We reject his arguments and conclude that there is no basis to afford him any relief pursuant to G. L. c. 278, § 33E. Accordingly, we affirm the orders denying the motion for a new trial and the other posttrial motions and the judgments of conviction.

The victim was a seventy-five year old woman who was murdered in her home during the early morning hours of September 27, 1990. In connection with the crimes with which the defendant was charged, the jury were warranted in finding the following facts. The defendant knew the location and layout of the victim's home, knew she was elderly and lived alone, and was aware that she had checks, jewelry, and money in her home. The defendant considered the victim an "easy target." He broke into the victim's home and, when confronted by her, beat her, stabbed her twice, tied her up with an electrical cord, and took a cord from an alarm clock, created a ligature, and strangled her to death. The defendant was found in possession of two of the victim's rings, and he had presented her checks. His fingerprints matched those taken from an exterior window of the victim's house. Bloodstains on the right knee area of the jeans and on the shirt worn by the defendant at the time of the murder were consistent with the victim's blood.

After his arrest, the defendant initially gave the police a writ-

---

[1]The various motions involved were the following: On May 5, 1997, the defendant filed a motion for a new trial which requested an evidentiary hearing and discovery. This motion was followed by other motions seeking discovery of photographs and other materials, and funds to hire experts. The trial judge denied the motion for a new trial and other motions without an evidentiary hearing on August 15, 1997, supporting his denial with a comprehensive and carefully prepared memorandum of decision. The defendant then filed combined motions to reconsider and stay the denial of his motion for a new trial and an amended and revised motion for a new trial which requested an evidentiary hearing and discovery. On September 4, 1997, the judge denied this motion and the other posttrial motions that he had not previously acted on.

ten statement in which he admitted going to the victim's home, but claimed that a friend from Florida who was with him committed the murder. In a subsequent written statement to the police, the defendant changed this story and confessed to murdering the victim and to burglarizing her home. Evidence found at the scene of the murder corroborated the details of the defendant's confession. After he had signed his confession, the defendant made a telephone call to his mother and was overheard by a police officer telling her, "I just killed someone, Ma. I didn't mean to do it. I was fucked up."

In reaching their conclusion that the defendant's guilt had been proved on all the charges beyond a reasonable doubt, the jury rejected the evidence the defendant presented in his case. That evidence included the defendant's testimony that he had gone to the victim's home with his brother and another man to burglarize the home, and that he had acted as a lookout while the other men entered the home through an unlocked window that the defendant had opened. The defendant told the jury that he had fled the scene when he "heard a lady scream."

1. We reject, as did the judge, the defendant's claim that he was deprived of effective representation by his trial counsel.[2] We consider the defendant's argument under the substantial likelihood of a miscarriage of justice standard, *Commonwealth v. Wright*, 411 Mass. 678, 681-682 (1992), keeping in mind that the defendant's trial counsel were faced with overwhelming evidence of their client's guilt.

(a) The defendant asserts that he told his trial counsel his "version" of the events (as described in his testimony summarized above) on the morning trial commenced; that his trial counsel failed to seek a continuance to investigate the evidence necessary to support his defense; and that they ignored the defense at trial.

The defendant's trial counsel met with him numerous times before the trial and were fully prepared to defend him. The trial judge found in denying the defendant's request for a new trial that, "if I had been told that the defendant waited until the morning of trial to make full disclosure [of his version of the events] to his attorneys and for that reason was seeking a

[2]The defendant was represented by two lawyers who acted as a team. We shall refer to them as a team throughout most of this opinion, with reference to the defendant's lead trial counsel when we discuss the conflict of interest allegation that the defendant has lodged against him.

continuance, I would absolutely not have granted it." This order would have been entirely proper on the record before the judge. See *Commonwealth* v. *Haley*, 413 Mass. 770, 773-775 (1992). The record discloses that the defendant's trial counsel presented his contention that he was not a participant in the murder in as vigorous a manner as possible. The defendant's claim that he was afforded no defense due to incompetency of his trial counsel lacks merit.

(b) The defendant contends that his trial counsel was ineffective because they pursued pretrial motions to suppress his written statements to the police on the ground that the statements were not intelligently or voluntarily made because he was so intoxicated he could not act with comprehension in talking with the police. The defendant asserts that the motions to suppress should have been based on "scientific literature" that he had given the police false statements due to psychological infirmities. In this respect, the defendant's appellate counsel characterizes the defendant as a "coerced-compliant person" and suggests that "[c]oerced-compliant false confessions arise when [such a] person knowingly gives the police false information in order to put an end to the psychological pressures of the interrogation session."

There is no factual support for this contention. The defendant's trial counsel proceeded on the motions to suppress on what they considered to be the best ground available. While the evidence of the defendant's intoxication does not appear to be substantial, the defendant's trial counsel cannot be criticized for making a reasonable strategic choice to proceed with the little they had and for declining to pursue an essentially baseless motion. The defendant's position on the motions to suppress was competently presented by his trial counsel, and the judge, before rejecting the motions after an evidentiary hearing, considered the defendant's arguments. We note that, at the trial, the defendant maintained that he had been psychologically compelled to admit to the murder. He raised this issue by testifying that he had complied with interrogation to stop the police from asking him questions. The jury were instructed at length about the need to find that the defendant's statements were intelligently and voluntarily made, and the judge's explanation of the law included an instruction that the jury were not to consider the defendant's statements if they found them to have

been "forced or tricked out of the defendant by physical intimidation or psychological pressure."[3]

(c) The defendant claims that his trial counsel were deficient in not obtaining DNA testing of a bloodstain inside the jeans which the jury found were worn by him during the murder. He says such further testing may have shown that the jeans were worn by his brother on the night of the murder.[4] He also asserts that his trial counsel should have sought fingerprint tests on other windows in the victim's home to discover possible fingerprints by one or both of the men the defendant claimed had entered the home and committed the murder.

Neither argument has any merit. The fingerprint issue fails because the police investigation discovered no identifiable latent fingerprints either inside or outside the vicinity of the home other than those which matched the defendant's fingerprints.[5] The contention about the need for DNA testimony is equally unpersuasive. Expert testimony established that the test results now sought by the defendant would have been unreliable because of the presence of contamination from fecal matter. There is nothing else to show that DNA testing might have furnished exculpatory evidence. The judge correctly dismissed this argument in his written decision denying a new trial as "nothing more than pure speculation."

2. On the fifth morning of trial, one of the defendant's trial counsel informed the judge that he had just realized, when he obtained and reviewed certified copies of certain criminal convictions which were to be used for impeachment purposes, that he had previously represented one of the Commonwealth's witnesses. Trial counsel's representation of this witness had concluded about one year before he was assigned to represent the defendant. Trial counsel conferred privately with the defendant on the problem, and a record was made of that confer-

---

[3] In addition to the argument just discussed, the defendant in another section of his brief makes an argument seeking suppression of his statements on due process grounds. This argument adds nothing to what we have already considered, and we reject it.

[4] An expert witness for the Commonwealth testified that a bloodstain on the outside right knee area of the jeans was consistent with the victim's blood and that the defendant's right knee tested positive for the presence of occult blood in a location consistent with the blood found on the jeans.

[5] Indeed, the defendant's present contention contradicts his trial testimony that his brother and the other man with him had worn gloves.

ence. The trial judge then met in the lobby with the defendant, both of his trial counsel, and the prosecutor. This meeting was also transcribed. The defendant acknowledged that the "whole background" of the conflict issue had been explained to him; that he had no objection to trial counsel who had previously represented the witness continuing to represent him; and that he was satisfied with the assurances by this trial counsel that he could, and would, cross-examine the witness in question vigorously, and that he would continue to do whatever he deemed necessary to protect the defendant's rights. Against this background, the defendant now claims that his trial counsel was hampered by an undisclosed, and significant, conflict of interest which detrimentally affected trial counsel's representation.

The conflict matter was handled properly. Trial counsel made full disclosure as soon as he realized that a problem might exist. The alleged conflict is tenuous. "There was nothing to suggest that counsel owed or felt any continuing duty of loyalty to [the witness] at the time of trial . . . or that he continued at that time to be under any ethical, economic or social constraint arising out of his prior representation of [the witness]" (citations omitted). *Commonwealth* v. *Leo*, 11 Mass. App. Ct. 283, 286 (1981). The situation was fully explained to the defendant, and the trial judge examined him about it. See *Commonwealth* v. *Martinez*, 425 Mass. 382, 392-393 (1997). With understanding of the problem, the defendant agreed to continuing with trial counsel's representation. The defendant has failed to satisfy his burden of showing any error or any harm to his defense. See *Commonwealth* v. *Fogarty*, 419 Mass. 456, 459 (1995); *Commonwealth* v. *Shraiar*, 397 Mass. 16, 20 & n.3 (1986). Contrast *Commonwealth* v. *Michel*, 381 Mass. 447 (1980).

3. In connection with his motion for a new trial, the defendant filed affidavits asserting that the police had violated his right under G. L. c. 276, § 33A, to make a telephone call, and, as a consequence, his written statements should have been suppressed. The judge rejected the defendant's affidavits. The judge relied on the testimony offered at the hearing on the motion to suppress, and at the trial, to conclude that the police had "exhibited a commendably high regard for the defendant's rights." No violation of G. L. c. 276, § 33A, has been

demonstrated.[6]

4. The defendant argues that he was denied a fair trial because a juror intentionally deceived the trial judge during voir dire of the jury venire by failing to disclose that he was an emergency medical technician who had assisted the prosecutor's office on an ambulance call and that he had socialized with the defendant's brother and his wife. The claim here appears to be that the juror was biased in favor of the prosecution and the defendant's brother, who had been implicated by the defendant in the commission of the murder. The defendant goes on to assert that, later in the trial, the prosecutor engaged in a "sham" to cover-up the problem when, before deliberations, the juror was removed from the sitting panel and made an alternate juror.[7]

There is nothing to indicate that the juror gave incomplete or untruthful answers to the judge during voir dire of the jury venire or that he was anything but completely impartial when he was selected to sit. Apart from this failure of proof, as the trial judge stated in his decision on the new trial motion, "[t]he short answer to the defendant's complaint is that, by agreement of all parties, [the juror] . . . was made an alternate juror and did not participate in the jury's deliberations." See *Commonwealth* v. *Smith*, 403 Mass. 489, 494 (1988). There was no error.

5. The trial judge acted properly in denying the defendant's motion for a new trial, and related motions, without an evidentiary hearing because no substantial issue was raised by them.

6. "The evidence against the defendant of this brutal attack on a vulnerable, older woman was overwhelming." *Commonwealth* v. *Wade, ante* 147, 155 (1998). There is no basis to grant him any relief pursuant to G. L. c. 278, § 33E.

---

[6]It will be recalled that the jury could have found that, while exercising his right to use the telephone, the defendant placed a call to his mother and was overheard telling her that he had "killed someone."

[7]The situation that caused the juror to be designated as an alternate juror came about as follows: A prospective witness on the Commonwealth's witness list was unknown to the juror by her correct name. The Commonwealth's witnesses were sequestered during the trial and this witness was not called to testify. When the witness came into the courtroom before closing argument, the juror recognized her as someone he knew, and this information was disclosed to the judge. After consultation with the judge, both counsel agreed that the juror should be designated as an alternate juror. As a result, the juror did not participate in the deliberations.

7. The orders denying the defendant's motion for a new trial and his other posttrial motions are affirmed. The judgments of conviction are affirmed.

*So ordered.*