COMMONWEALTH *vs.* CHAD N. BARTOS.[1]

No. 01-P-1066.

Essex. December 5, 2002. - April 9, 2003.

Present: PORADA, KAPLAN, & GREEN, JJ.

*Practice, Criminal,* Revocation of probation, Admission to sufficient facts to warrant finding, Continuance without a finding. *Moot Question.*

This court declined to consider whether the appeal of a defendant whose probation had been revoked after he had admitted to sufficient facts to warrant a finding of guilty, which case had been continued without a finding of guilty until three years later, was moot, where the parties had not fully briefed the issue. [754-757]

At a probation revocation proceeding, the judge did not abuse his discretion in denying the defendant an unqualified continuance to await a psychiatric evaluation report about the defendant's condition at the time of the crimes alleged to constitute the probation violations, where the defendant did not move for a continuance until after the Commonwealth had rested its case, where the defendant's cross-examination of the Commonwealth's witnesses was strong, and where the defendant himself exhibited his competence by participating at length in the cross-examination and by promptly electing not to testify after the continuance had been denied. [757-758]

COMPLAINT received and sworn to in the Salem Division of the District Court Department on March 11, 1999.

A proceeding for revocation of probation was heard by *James H. Wexler,* J., and a motion to revise and revoke was also heard by him.

*John J. Courtney* for the defendant.

*James A. Janda,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. *The case.* 1. On March 11, 1999, a complaint in District Court charged the defendant, Chad Bartos, with three

[1]Now known as Chad Nathan Barrows. As is our custom, we use the name in the complaint.

counts of violating an abuse prevention order earlier issued under G. L. c. 209A, § 7. On March 19, upon admission to sufficient facts, the judge sentenced the defendant, on count 1, to nine months in a house of correction, thirty days committed, balance suspended, and on counts 2 and 3, to concurrent one-year terms of probation.

2. During the following month the defendant was charged in District Court with the crimes of (i) violating a restraining order on March 31 by approaching his wife by means of a telephone call, and (ii) committing an assault and battery upon a court officer on April 12.

3. In consequence, the probation department duly served the defendant with notices of violation of probation dated April 26 and September 17, with specification of the two criminal complaints.

4. The substance of the proof at the probation violation hearings on four dates in October and November consisted, first, regarding the abuse charge, of testimony by the wife that on March 31 she had received some six hang-up telephone calls at her home, where the defendant had previously visited her. She consulted the "caller ID" box. This reported the calls as unidentified. She believed the defendant was responsible for the calls. She remembered one particular source number, the others as a different number, but she did not herself recognize those numbers; she thought the calls may have originated at the "pay phone at the jail" (the defendant evidently was then at the Middleton house of correction). She reported the calls to the police.

Second, with respect to the probation violation consisting of the defendant's attack on a court officer, there was testimony that on April 12 the defendant, then in custody, was arraigned in District Court on the charge of violating an abuse prevention order. Handcuffed and shackled on account of previous misbehavior, he was guarded in the courtroom by Officers Harold Patch and Robert Fothergill. The defendant became vocal and abusive. The presiding judge ordered him removed from the courtroom. Officer Patch testified that in the course of being removed, the defendant pushed into him, knocked off his glasses, and drove him into a cement wall. Officer Fothergill

and other officers restrained the defendant. The next day Officer Patch sought medical help at Massachusetts General Hospital for neck and back soreness.

5. With the Commonwealth's proof concluded after the first day of the probation violation hearing, the defendant's standby counsel moved for a continuance to await a psychiatric evaluation report about the defendant's condition at the time of the crimes alleged to constitute the probation violations. After some confusion, it was accepted that a judge in District Court had earlier authorized funds (see G. L. c. 123, § 15) for an independent evaluation to determine whether the defendant was criminally responsible at the dates of the offenses.

Responding to the continuance motion, the judge began by saying (we are reverting to the judge who was conducting the probation violation hearings) that the defendant had been found competent to stand trial and further, it was his, the judge's, own observation that the defendant was competent. After discussion with counsel, the judge denied the motion for a continuance, but with the assurance that if he decided against the defendant that violation had occurred, he would leave the proceedings open to receive the report: he undertook that there would be no actual judgment of violation if it was found after hearing that the defendant was not responsible at the critical times.

6. Now, the defendant having declined to take the stand to testify on his own behalf, the judge, on the basis of the evidence presented, ruled against the Commonwealth on the abuse prevention violation, and in the Commonwealth's favor on the assault and battery violation. But the judge made no disposition; rather, as promised, he continued the hearing to await the evaluation report.

7. At a hearing (the third) on November 9, 1999, the judge said he had received a letter from Dr. Robert H. Joss stating that the defendant had directed him to stop the evaluation. The defendant confirmed to the judge that he no longer wanted the evaluation.

On November 19, at a final hearing, the judge disposed of the case: he revoked the defendant's original March 19 probation on abuse prevention counts 2 and 3, and on those counts committed him to concurrent two-year terms in a house of correc-

tion (also to be served concurrently was the balance of the sentence on count 1). We shall assume that the defendant has served the sentence for violation of probation.

8. A single justice of our court allowed the defendant to file a late notice of appeal in effect attacking the revocation of probation: this, it appears, on the ground that the judge erred in denying an unqualified continuance of the probation revocation proceeding.

9. The Commonwealth has moved to dismiss the appeal on grounds of mootness. This is based on the fact that, on December 17, 1999, in the separate criminal case against the defendant for assault and battery upon the court officer, the judge accepted the defendant's admission to sufficient facts to warrant a finding of guilty, and continued the case without a guilty finding until December 17, 2002.

The Commonwealth in its brief leaves the recitation of proceedings at that. The record, however — which, to be sure, is hard to read — discloses, in addition, that the matter on October 25, 2001, was "brought forward" by the probation department and a "default warrant" was issued against the defendant. There the record stops.

As discussed *infra*, we shall pretermit the issue of mootness because not fully argued and thus we shall deny dismissal of the appeal. Then we go on to the merits and affirm the judgment.

*Motion to dismiss appeal as moot.* In moving to dismiss the appeal, the Commonwealth cites and relies upon *Commonwealth v. Fallon*, 53 Mass. App. Ct. 473 (2001). Fallon, while on probation on a six-month suspended sentence for an OUI conviction, had been freshly arraigned for an assault and battery on his female companion and for intimidating a witness. These charges were the grounds for a proceeding to revoke Fallon's probation, which succeeded, and he was sentenced to the original term and served it. He appealed to our court, questioning the regularity of the revocation proceeding. See *id.* at 474 n.1. Pending the appeal, the Commonwealth had gone ahead with the criminal charges; these were duly tried, and Fallon was convicted. Taking judicial notice of the convictions, we held the appeal had become moot.

In explanation, one starts with a case where a defendant has

been found in violation of his probation "contract" and his sentence has been reinstated. Our court accepts and decides the defendant's appeal from the violation order even though the defendant has already served his sentence. The appeal is held to be alive, not moot, because of the possible "collateral consequences," damaging to the defendant, that would attach to the revocation decision which may in fact have been tainted with error. See *Blake* v. *Massachusetts Parole Bd.*, 369 Mass. 701, 704 (1976); *Commonwealth* v. *Fallon,* 53 Mass. App. Ct. at 474. In the *Fallon* case, however, the very bases of the violation — assault and battery and witness intimidation — which need only have been found against the defendant by a preponderance of the evidence in the revocation hearing, had now been found against him beyond a reasonable doubt after criminal trial. We said in *Fallon, supra* at 475:

> "The convictions establish, as matter of record, based on the higher, beyond a reasonable doubt standard of proof, see *Commonwealth* v. *Holmgren,* 421 Mass. [224,] 225-227 [1995], that the defendant, while on probation, violated the conditions of his freedom by committing new criminal offenses. That fact submerges any residual negative consequences of the probation revocation, so that questions concerning the validity of the revocation are now purely academic."

Although, in strictness, there may be argument whether the rationale of *Fallon* extends to a guilty plea, we accept that a guilty plea does qualify as a *Fallon*-type "submerger." In the case at bar, however, the defendant was not tried and found guilty of the new charge of assault and battery, nor did he plead guilty; rather, he admitted to sufficient facts. It seems at least awkward to conjure with the effect of the admission to sufficient facts, when on the face of the record the continuance of the assault case without a finding, based on the admission, remains open — without conclusion whether the assault charge will be dismissed (because the probation conditions will be found to have been observed) or a guilty finding and sentence will be entered (conditions found violated).

Passing that point, the Commonwealth's only effort to bridge the difference between conviction or guilty plea according to

*Fallon* and the admission to facts in the present case, has been to quote a passage from *Commonwealth* v. *Jackson*, 45 Mass. App. Ct. 666, 670 (1998): "a conviction occurs when there has been a finding of guilty by a jury or a judge at a jury-waived trial, the entry of a formal guilty plea, or an admission of sufficient facts." A conflating of admission to facts with guilty plea is also suggested by the occasional characterization of admission to facts as the "functional equivalent" of a guilty plea. See *Commonwealth* v. *Greene*, 400 Mass. 144, 145 (1987). But perhaps the references to admission in *Jackson* and *Greene* should be read as shorthand for admission followed by finding and sentence for breach of the conditions of continuance. Compare what the Supreme Judicial Court said of the very *Jackson* case in *Commonwealth* v. *Villalobos*, 437 Mass. 797, 802 (2002): "An admission to sufficient facts followed by a continuance without a finding is not a 'conviction' under Massachusetts law. See *Commonwealth* v. *Jackson*, 45 Mass. App. Ct. [at] 670 . . . (admission to sufficient facts followed by continuance without finding is not 'conviction' for purposes of statute allowing impeachment by prior convictions). Indeed, one of the purposes underlying the disposition of continuance without a finding is to allow a deserving defendant to 'avoid[] the consequences of having a criminal conviction' " (citations omitted).[2]

For analogy, we turn to the model situation of a civil action, say against a person for negligent behavior resulting in damage — it would be conclusive against the defendant that he or she had been tried and convicted of negligence on the severer criminal standard: this would follow from the accepted principle of former adjudication that goes by the name of issue preclusion. See Restatement (Second) of Judgments § 85(2)(a) (1982); *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. 737, 742 (1985). But the same result does not follow where the criminal prosecu-

---

[2]During the two-tier trial de novo system in the District Court and Boston Municipal Court, an admission to sufficient facts, without a follow-up "appeal" by the defendant to the next tier of jury trial, might well be thought of as the equivalent of a guilty plea. This model disappears with the repeal of that system and the enactment of the procedures of G. L. c. 278, § 18, and G. L. c. 276, § 87. See discussion in *Commonwealth* v. *Pyles*, 423 Mass. 717, 720-721 (1996), and *Commonwealth* v. *Villalobos*, 437 Mass. at 800-801.

tion eventuates in the defendant's admission to sufficient facts: preclusive effect is not accorded because the issues in the prosecution would not have been "actually litigated" and decided. See Restatement, *supra* at § 85 comment b; *Davis* v. *Allard*, 37 Mass. App. Ct. 508, 511 (1994), *S.C.*, *Davis* v. *Westwood Group*, 420 Mass. 739 (1995); *Hopkins* v. *Medeiros*, 48 Mass. App. Ct. 600, 613 (2000).[3] This seems to look to holding our present appeal to be not moot, until we reflect that the policies regarding "collateral consequences" of a probation revocation, see, e.g., *Commonwealth* v. *Villalobos*, *supra* at 804, do not coincide with the policies of former adjudication.

As noted, for lack of full party argument we express no final opinion about mootness. See *Commonwealth* v. *Christian*, 46 Mass. App. Ct. 477, 479-480, *S.C.*, 429 Mass. 1022 (1999).

*Merits of the appeal.* The defendant makes no claim that there was insufficient evidence to support the judge's finding about the attack on the court officer. Rather the defendant argues that to hold him to the finding would be unfair (or possibly unconstitutional) because, in denying a continuance simpliciter, the judge put the defendant and standby counsel to an uncertainty interfering with their conduct of the defense. The fact, however, is that the case progressed through the testimony of the three Commonwealth witnesses about the alleged violations without any motion for, or a question concerning, a continuance. Cross-examination of the witnesses by the defense was strong. The defendant himself exhibited his competence by participating at length in the cross-examination. (Indeed the defense prevailed on one of the charges.) It was only after the Commonwealth finished with the witnesses and concluded its presentation that counsel moved for a continuance.[4] Remaining was the question whether the defendant would testify, and the defense was as competent to answer it as it had been to cross-examine. In fact, the defendant promptly made his election to decline to take the stand, and the judge went on to make his

_____

[3]The admission to sufficient facts (or guilty plea) in the criminal prosecution might, however, be offered as a litigative admission in the trial of the civil action. See *Aetna Cas. & Sur. Co.* v. *Niziolek*, 395 Mass. at 747.

[4]The Commonwealth notes that appellate defense counsel appears to assume, mistakenly, that the defense moved for a continuance at an earlier stage.

findings, with disposition of the case to await the evaluation report and possible further proceedings. The judge saw the evidentiary component of the case, as he called it the happenings, chiefly of the assault incident as distinct enough from the psychological or mental element to justify a temporary bifurcation. The judge's treatment was well within the "sound discretion" traditionally allowed to a judge in managing questions of continuance. See *Commonwealth* v. *Miles,* 420 Mass. 67, 85 (1995). Finally, the issue exhausted itself when the defendant said he did not want to go on with an evaluation.

*Judgments affirmed.*