## Commonwealth vs. Allen Scoggins.

Plymouth. April 11, 2003. - June 18, 2003.

Present: Marshall, C.J., Greaney, Cowin, Sosman, & Cordy, JJ.

*Practice, Criminal,* Assistance of counsel, Admissions and confessions, Waiver, Voluntariness of confession, Capital case. *Constitutional Law,* Waiver of constitutional rights, Assistance of counsel. *Evidence,* Admissions and confessions. *Homicide.*

In a murder case, the evidence presented at a hearing on the defendant's motion to suppress his statements to police warranted the judge's conclusions that the defendant voluntarily waived his Miranda rights, gave a voluntary confession, and did not invoke his right to an attorney before his confession. [575-577]

In a murder case, no substantial likelihood of a miscarriage of justice resulted from the defendant's trial counsel's failing to seek to suppress the defendant's postarrest statements to police made without having the opportunity to use a telephone, where the statutory right to a postarrest telephone call provided in G. L. c. 276, § 33A, did not apply to police procedures employed in another jurisdiction having no statutory counterpart to § 33A, and where the defendant, in any event, failed to produce evidence of an intentional denial of the right to a telephone call. [577-578]

Indictment found and returned in the Superior Court Department on June 9, 1997.

Pretrial motions to suppress evidence were heard by *Patrick J. King,* J.; the case was tried before *Charles F. Barrett,* J.; and a motion for a new trial, filed on November 29, 2001, was heard by *Patrick F. Brady,* J.

*Jeffrey L. Baler* for the defendant.

*Kelly-Anne DeFao,* Assistant District Attorney, for the Commonwealth.

Cowin, J. In the early morning hours of May 16, 1997, Ishmael Lopez Rivera, a taxicab driver, was murdered in Brockton. The defendant, Allen Scoggins, was indicted for the murder. A jury in the Superior Court convicted Scoggins of murder in the first degree on the theories of deliberate premeditation and

felony-murder (the underlying felony being attempted commission of an armed robbery). Represented by new counsel on appeal, Scoggins argues that his statements to police officers should have been suppressed. He also requests relief under G. L. c. 278, § 33E. In addition, while this appeal was pending, the defendant filed a pro se motion for a new trial that was denied without a hearing by another judge (the trial judge having retired). In his pro se submissions, the defendant raises additional arguments (that are not raised in his appellate counsel's brief): ineffectiveness of trial counsel for reasons including failure to argue for suppression of statements based on G. L. c. 276, § 33A, and failure to challenge the sufficiency of the evidence before the grand jury; insufficiency of the evidence at trial; and misconduct by the prosecutor in closing argument. We affirm the conviction and the denial of the motion for a new trial, and we perceive no basis for the exercise of our power under G. L. c. 278, § 33E.

1. *Facts.* The jury could have found the following facts. Just after 1:20 A.M. on May 16, 1997, as a result of gunshot wounds, the victim collapsed not far from the taxicab he had been driving. He was pronounced dead minutes later. His taxicab had rolled onto a lawn, where it stopped, its lights on and its engine still running. Circumstantial evidence tied the defendant to the crime. A man had telephoned the taxicab company asking to be driven from Wyman Street to West Elm Street in Brockton, and the victim was dispatched to this call at 1:09 A.M. The defendant was seen entering the taxi at the Wyman Street location at around 1:15 A.M., and evidence indicated that the defendant was the victim's last fare. In addition, the jury heard testimony that shortly after the shooting, the defendant appeared in South Carolina, where he boasted about committing a murder. He said he had telephoned for a taxicab and that he had intended to "stick up" the driver. The driver, however, "got scared," "tried to call the police," and "was going to jump out of the car," so the defendant shot him. As a result, the defendant joked, he could no longer take taxicabs. The defendant was arrested in South Carolina on October 7, 1997.

2. *Motion to suppress.* The defendant was interrogated by the Massachusetts authorities in South Carolina the day after his ar-

rest and made a number of incriminating statements.[1] He filed a motion to suppress those statements, claiming that they were taken in violation of his Miranda rights and were not voluntary. In addition, the defendant argued that the statements should be suppressed because his arraignment was unreasonably delayed. At a hearing on that motion, the evidence included an audiotape recording and transcript of the interrogation.

The motion judge made the following findings of fact, each of which was warranted by the evidence. The defendant was indicted for murder on June 9, 1997, but the police were unable to locate him. In August, 1997, the police learned that the defendant had fled to South Carolina. Considerable publicity was focused on the North Charleston area, but the authorities were not successful in locating the defendant at that time. Subsequently, police in South Carolina received information that the defendant was staying at a specific address and arrested him at about 10 A.M. on October 7. The defendant was brought to the local police station where he was read his Miranda rights and indicated that he understood them. At the time, he was nineteen years of age and had prior experience with the juvenile justice system at sixteen years of age. During the course of the morning, South Carolina police also presented the defendant with a "Waiver of Extradition" form and a "Prompt Arraignment Notification and Waiver" form (the latter had been sent by facsimile transmission from Massachusetts). The defendant signed both. Throughout this process, the defendant appeared calm and "nonchalant."[2]

Massachusetts State Trooper Leonard Coppenrath and Brockton Detective Mark Reardon traveled to South Carolina that

---

[1] He confessed that he was the victim's last fare and that he carried with him a loaded gun. He also admitted that he pulled out the gun after the victim made a wrong turn and that the victim was shot with the gun the defendant carried. However, the defendant claimed that he could not recall precisely what had happened, just that "[t]he gun was going off" and that he was drunk or "high" on drugs (marijuana containing cocaine). The defendant denied that he attempted to rob the victim and claimed self-defense. The defendant also said that he was sorry for taking someone's life.

[2] At some point on October 7, 1997, the defendant was apparently brought before a court in North Charleston, South Carolina. The record is silent as to the purpose of this appearance. The motion judge speculated that the appearance was for arraignment on a fugitive from justice complaint.

evening. They arrived at the police station sometime after 11 A.M. the next morning, October 8, 1997, and introduced themselves to the defendant. Noticing that the defendant was shivering, they moved him to a warmer room, and Trooper Coppenrath gave the defendant his suit jacket so that the defendant would be comfortable. The officers asked the defendant if he would like any food or drink and provided him with water at his request. The defendant was not in handcuffs or otherwise restrained. The officers were in plain clothes. They informed the defendant he was under arrest for the murder of a Brockton taxicab driver and for intimidation of a witness (the latter charge arose from a different case involving the defendant's brother). The defendant said that he knew about the murder charge, but not about the intimidation charge. He said that he had a tenth grade education and could read and write, that he had no mental illness, and that he could understand English. There was no indication that the defendant was under the influence of drugs or alcohol. (By the time of the interview, he had been in custody for over twenty-four hours.)

The defendant was again informed of his Miranda rights and indicated that he understood those rights. He asked Trooper Coppenrath if he should have an attorney present, and the trooper explained that this was the defendant's decision to make. The interrogation proceeded, and the defendant did not request an attorney. The defendant was given the option of having his statements reduced to writing or proceeding with a tape-recorded interview. He chose the latter option, and the interrogation, which lasted about one and one-half hours, was recorded. When the recording began, the trooper again reviewed the Miranda waiver form with the defendant and had the defendant sign the form while the tape was recording. The interrogation began with questions about the witness intimidation charge (the defendant denied this charge) and proceeded to the murder charge.

Based on the evidence before him, the motion judge found that the defendant clearly understood the purpose of the interview; that the police did not coerce or intimidate the defendant; and that the defendant was not mistreated in any way. Thus, the judge concluded that the defendant knowingly,

intelligently, and voluntarily waived his Miranda rights and that his statements were voluntary. As for the argument that the defendant's arraignment was unreasonably delayed, the motion judge ruled that, even if the "safe harbor" rule of *Commonwealth* v. *Rosario*, 422 Mass. 48, 56-57 (1996), applied, the defendant validly waived his right to a prompt arraignment.

On appeal, the defendant advances a number of arguments that we consider in turn. In examining the denial of the defendant's motion to suppress, we give substantial deference to the judge's findings of fact and review his application of the law de novo. *Commonwealth* v. *Beland*, 436 Mass. 273, 279 (2002).

a. Miranda *and voluntariness issues.* The defendant first alleges that the police ignored his request for an attorney. See *Miranda* v. *Arizona*, 384 U.S. 436, 474 (1966). Rather than requesting an attorney, the defendant asked if he needed one. As the motion judge correctly concluded, a mere inquiry regarding the need for an attorney does not require the police to cease an interrogation. See *Commonwealth* v. *Jones*, *ante* 249, 258-259 (2003); *Commonwealth* v. *Judge*, 420 Mass. 433, 450 (1995); *Commonwealth* v. *Todd*, 408 Mass. 724, 726 (1990).

The defendant also claims that his statements must be suppressed because he did not voluntarily waive his Miranda rights. See *Commonwealth* v. *Gaboriault*, *ante* 84, 89 (2003) (defendant's waiver "must be voluntary, knowing, and intelligent"). The defendant asserts that his age, his education, and his discomfort at the time of the interrogation combined to render his waiver involuntary.[3] Although it is the Commonwealth's burden to establish the voluntariness of a Miranda waiver beyond a reasonable doubt, see *id.*, the motion judge determined that that burden had been met, and we see nothing in the totality of the circumstances surrounding the waiver, see *Commonwealth* v. *Rodriguez*, 425 Mass. 361, 366 (1997), that would justify a contrary ruling. At the time of the interrogation, the defendant was an adult, able to read and understand English,

---

[3]The defendant also asserts that we should consider the delay in his arraignment when we evaluate the validity of his Miranda waiver. We see nothing in the record to indicate that the motion judge erred in finding that the defendant voluntarily waived his right to a prompt arraignment.

and had previous experience with the justice system (albeit as a juvenile). There is no indication that the defendant had a mental disability, was under the influence of drugs or alcohol, or was promised anything in exchange for his waiver. Although the defendant appeared to be shivering in the initial interview room, the officers moved him to a warmer room and gave him a jacket to wear before questioning him. There is, in short, no basis for the defendant's contention that he did not voluntarily waive his Miranda rights.

Our inquiry into the admissibility of the defendant's confession does not end with his Miranda waiver, however. The Commonwealth must also demonstrate beyond a reasonable doubt that any statements made after the defendant waived his rights were made voluntarily. See *Commonwealth* v. *Beland, supra* at 279. We examine the voluntariness of the defendant's statements using the same totality of the circumstances test that we applied to his Miranda waiver. See *id.* While most of the relevant circumstances are identical to those discussed previously in connection with the waiver, one additional variable affects the voluntariness of the defendant's statements: the interrogation techniques employed by the investigating officers.

The defendant focuses on two of these techniques. According to the defendant, the police first deceptively gave him the impression that conviction was a certainty and subsequently led him to believe that a confession would help his defense or reduce his sentence. Even though the use of a ruse by the police is insufficient, by itself, to render a confession involuntary, see *Commonwealth* v. *Selby*, 420 Mass. 656, 663-664 (1995), a false statement concerning the strength of the Commonwealth's case, coupled with an implied promise that the defendant will benefit if he makes a confession, may undermine "the defendant's ability to make a free choice." *Commonwealth* v. *Meehan*, 377 Mass. 552, 563 (1979), cert. dismissed, 445 U.S. 39 (1980). The specter of coercion arises in these circumstances from the possibility that an innocent defendant, confronted with apparently irrefutable (but false) evidence of his guilt, might rationally conclude that he was about to be convicted wrongfully and give a false confession in an effort to salvage the situation.

See generally Ofshe, The Decision to Confess Falsely: Rational Choice and Irrational Action, 74 Denv. U. L. Rev. 979 (1997).

Though we are mindful of these considerations, our examination of the record indicates that the motion judge correctly found that the defendant's confession was voluntary. The officers did not confront the defendant with any false evidence or expressly state that a conviction was certain. It appears from the transcript of the interrogation that the defendant reached this conclusion independently. The officers also stopped short of making an assurance that the defendant would benefit from admitting his guilt.[4] Cf. *Commonwealth* v. *Meehan, supra* at 564-565. Absent either of the techniques mentioned above, as well as any other evidence of coercion, we can only conclude that the defendant's confession was the rational product of his own free will. See *Commonwealth* v. *Selby, supra* at 662.

b. *Right to telephone call.* In his pro se brief, the defendant argues that trial counsel was ineffective for not seeking to suppress his statements based on the requirements set forth in G. L. c. 276, § 33A.[5] He claims that he was not afforded an opportunity to use a telephone after he was arrested, and consequently that, had this ground been urged, his statements would have been suppressed. We review for a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Dykens*, 438 Mass. 827, 831, 836-837 (2003); *Commonwealth* v. *Wright*, 411 Mass. 678, 682 (1992) (if defendant cannot show substantial likelihood of miscarriage of justice from unpreserved error, he

---

[4]Because the interrogation was recorded, we were able to confirm the precise words used when the defendant was confronted with the evidence against him. Given the fine line between proper and improper interrogation techniques, the ability to reproduce the exact statements made during an interrogation is of the utmost benefit. See *Commonwealth* v. *Diaz*, 422 Mass. 269, 272-273 (1996). See also *Commonwealth* v. *Groome*, 435 Mass. 201, 219 n.26 (2001).

[5]General Laws c. 276, § 33A, provides that:

"The police official in charge of the station or other place of detention having a telephone wherein a person is held in custody, shall permit the use of the telephone, at the expense of the arrested person, for the purpose of allowing the arrested person to communicate with his family or friends, or to arrange for release on bail, or to engage the services of an attorney. Any such person shall be informed forthwith upon his arrival at such station or place of detention, of his right to so use the telephone, and such use shall be permitted within one hour thereafter."

cannot prevail by asserting ineffective assistance as to same issue).

While it is true that, in Massachusetts, unfavorable evidence derived from an intentional denial of a suspect's statutory right to a postarrest telephone call must be suppressed, *Commonwealth* v. *Johnson*, 422 Mass. 420, 429 (1996), the police departments in South Carolina are not bound by Massachusetts law. The legality of the procedures employed by the police forces of other States operating in their own jurisdiction is governed by the law of that jurisdiction, see *Commonwealth* v. *Federici*, 427 Mass. 740, 742 (1998), and South Carolina has no statutory counterpart to § 33A. In any event, the defendant has the burden of producing evidence of an intentional denial of his right to a telephone call, see *Commonwealth* v. *Fancy*, 349 Mass. 196, 205-206 (1965), and he has failed to do so.

3. *Other issues.* The remaining arguments in the defendant's pro se submissions do not require extended discussion. It was not error for the judge who denied the motion for a new trial also to deny the defendant an evidentiary hearing on that motion; the defendant's submissions raised no substantial issues. See *Commonwealth* v. *Cook*, 438 Mass. 766, 774 (2003). The defendant's self-serving affidavits and assertions are not sufficient, on their own, to raise a substantial issue. Likewise, there is no merit to the claim that there was insufficient evidence before the grand jury. See *Commonwealth* v. *McCarthy*, 385 Mass. 160, 163 (1982). The grand jury were presented with ample evidence (including testimony concerning two eyewitness identifications) to support a finding of probable cause, see *Commonwealth* v. *Colon*, 431 Mass. 188, 193 (2000). While the defendant complains that the prosecutor referred to evidence outside the record in her closing argument, the alleged misstatements were, in fact, a permissible argument based on evidence properly before the jury.[6] The evidence presented at trial was

---

[6]We have reviewed the remaining arguments (which relate to alleged ineffective assistance of counsel) in the defendant's pro se brief. To the extent we have not addressed these expressly, they are without merit. The judge who denied the motion for a new trial did not resurrect any issues. See *Commonwealth* v. *Boateng*, 438 Mass. 498, 505 (2003).

sufficient to convict the defendant of murder in the first degree based on either theory of which he was convicted.[7]

4. *Review under G. L. c. 278, § 33E.* The defendant shot the victim three times in a planned but botched robbery, and then left the victim to die. After a comprehensive review of the record, we find no reason to reduce the verdict or to order a new trial.

*Judgment affirmed.*

*Order denying motion for*
*a new trial affirmed.*

---

[7]The defendant moved for a required finding of not guilty at the close of the Commonwealth's case. The defense presented no witnesses.