COMMONWEALTH *vs.* VALERIO DIGIAMBATTISTA.

No. 00-P-876.

Middlesex. May 9, 2003. - September 5, 2003.

Present: PERRETTA, DUFFLY, & GREEN, JJ.

Further appellate review granted, 440 Mass. 1106 (2003).

*Practice, Criminal,* Motion to suppress, Findings by judge, Admissions and confessions, Instructions to jury, Voluntariness of confession. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Evidence,* Corroborative evidence. *Burning a Dwelling House.*

This court concluded that a criminal defendant's confession was valid where the defendant knowingly waived his Miranda rights thirty minutes before his interview by police became a confrontational interrogation; further, police tactics during questioning, which were intended to mislead the defendant into believing the Commonwealth had evidence against him that it did not have, did not, in the circumstances, render the defendant's statements involuntary. [193-195]

In a criminal case, the judge was entitled to credit the testimony of police officers over that of the defendant in rejecting the defendant's claims that police ignored his alleged request for an attorney during questioning; that police made him an offer of leniency if he confessed; that police threatened to jail his fiancée and take his children if he did not cooperate; and that the manner of his introduction to a State trooper during the investigation created a coercive atmosphere. [195]

In a criminal case, the judge properly denied the defendant's motion for a required finding of not guilty, which was based on the defendant's argument that his confession was not sufficiently corroborated. [195-197]

The judge in a criminal case in which the defendant was charged with arson of a dwelling house under G. L. c. 266, § 1, correctly denied the defendant's request for an instruction that the jury could convict the defendant of burning a building, G. L. c. 266, § 2, where burning a building did not constitute a lesser included offense of arson of a dwelling house, and where the evidence was sufficient to permit the jury to find that the structure at issue was in fact a dwelling house. [197-199]

A criminal defendant convicted of arson failed to demonstrate that he was entitled to a new trial based on his impeachment with a prior conviction for armed robbery, where the prior conviction, although later vacated, was valid at the time of the arson trial and constituted a "final judgment" within the meaning of G. L. c. 233, § 21. [199]

INDICTMENT found and returned in the Superior Court Department on June 5, 1998.

A pretrial motion to suppress evidence was heard by *Charles T. Spurlock*, J.

Following review by the Appeals Court, 55 Mass. App. Ct. 1112 (2002), further findings of fact regarding the defendant's motion to suppress were made by *Spurlock*, J.; the case was tried before *Judith A. Cowin*, J.

*John A. Baccari* for the defendant.

*Kevin J. Curtin*, Assistant District Attorney, for the Commonwealth.

Duffly, J. Near midnight on March 10, 1998, a building located at 109 Adams Street in Newton was, as State police later determined, intentionally set on fire with gasoline. Thereafter the defendant, who had moved from that address a few days earlier, was twice interviewed. During the second interview, on April 10, 1998, he confessed to having set the fire. Following a trial by jury, the defendant was convicted of burning a dwelling house, G. L. c. 266, § 1.[1] The defendant appeals the denial of his motion to suppress incriminating statements. He also appeals the denial of his motions for a required finding of not guilty and for a new trial, and claims error in the judge's refusal to give a requested instruction. We affirm.

1. *Motion to suppress.* The defendant claims that the motion judge (who was not the trial judge) erred in failing to suppress inculpatory statements made during the April 10 interview because (1) Miranda warnings were not repeated after routine questioning had turned to interrogation and after he had requested an attorney; and (2) his statements were obtained through threats, coercion, and trickery. In our August 8, 2002, memorandum and order issued pursuant to rule 1:28, see *Commonwealth* v. *DiGiambattista*, 55 Mass. App. Ct. 1112 (2002), we ordered that additional findings be made, having determined that due to the conflicting evidence presented at the hearing on the motion to suppress, we could not decide these issues absent findings reflecting credibility assessments made by the motion judge.[2] *Commonwealth* v. *Williams*, 58 Mass. App. Ct. 139, 144

---

[1]The Commonwealth filed a nolle prosequi on an indictment charging him with malicious destruction of property.

[2]We retained jurisdiction so that, upon our receipt and review of the additional findings, we could decide the remaining claims of error in light of our disposition of the appeal from the denial of the motion to suppress. The judge

(2003). Additional findings thereafter issued, which we summarize as follows.

The defendant and his nineteen year old fiancée, Nicole Miscioscia, and their two young children lived at 109 Adams Street until moving to another address four days before the fire in question. Following the fire, the defendant and Nicole were questioned briefly in their home by three police officers. Thereafter, one of the officers, State Trooper Timothy MacDougall, called Nicole and explained they would like to meet with them again. MacDougall, who knew that neither the defendant nor Nicole could drive, said that he would pick up the defendant, Nicole and the children to take them to the interview site, the Chelsea fire station. MacDougall explained further that they were not under arrest. At the fire station, the defendant was taken to one room, where he remained for the duration of the two-hour interview, while Nicole and the children were taken to another room.

MacDougall and Newton police Officer Steve Fontano, who had been present at the initial interview, met with the defendant. The tone, at the outset, was conversational. The defendant was again told that he was not under arrest, and that he was free to go at any time. He received Miranda warnings, and he indicated he understood them. He then signed a release form waiving his rights and expressing his wish to speak with the officers.

About twenty to thirty minutes into the interview, the tenor of the questioning changed and, as the judge found, there commenced an "interrogation phase of the interview." The police confronted the defendant with the fact that he was their primary suspect, and that they had a witness who placed him at the scene on the evening of the fire. The defendant denied that he had set the fire, and denied that he had been at the scene of the fire on the night in question. He offered, when requested, to take a lie detector test.

It was then that the officers implemented a plan they had earlier devised. Another State Trooper, Paul Zipper, came into the interview room by prior arrangement, and handed MacDougall "a file stuffed with six inches of blank paper and

on March 4, 2003, filed his supplemental findings of fact, rulings of law and order on defendant's motion to suppress. Thereafter, on May 9, 2003, the parties presented further oral argument.

newspaper" and two videotapes. The police had created a label, "Paolini Worker's Comp Construction Case," and attached it to a blank tape; the other, labeled "109 Adams Street" was footage of the fire scene taken by the police. MacDougall placed the items next to him on the table and asked the defendant: "If I told you that somebody at Paolini Construction [located adjacent to the burned building] was under surveillance by an insurance company for a worker's comp fraud case, is there any reason you would show up on that videotape?" The defendant denied that he could have been taped at the scene. MacDougall and Fontane left the interview room and were replaced by Zipper. Shortly thereafter, the defendant made incriminating statements to Zipper and eventually signed a written statement in which he confessed to having set the fire.

The judge was entitled to credit the testimony of the police officers and not to credit that of the defendant. *Commonwealth* v. *Yesilciman*, 406 Mass. 736, 743 (1990). "In reviewing the denial of a motion to suppress, we accept the motion judge's subsidiary findings of fact absent clear error." *Ibid.* However, the judge's conclusions of law, as well as his findings of ultimate fact that derive from the subsidiary findings, are open to reexamination by this court. *Commonwealth* v. *Cruz*, 373 Mass. 676, 682 n.2 (1977) ("In reviewing the record on this issue '[w]e accept, as we must, the trial judge's resolution of conflicting testimony . . . , and will not disturb his subsidiary findings if they are warranted by the evidence. . . . However, ultimate findings and conclusions of law, particularly those of constitutional dimensions, are open for our independent review in this appeal' " [citations omitted]); *Commonwealth* v. *Barros*, 435 Mass. 171, 174 n.5 (2001); *Commonwealth* v. *Evans*, 436 Mass. 369, 372 (2002). Our decision affirming the denial of the motion to suppress embodies these familiar principles.

a. *Claim that Miranda warnings should have been repeated.* The defendant argues that his confession was invalid because the police should have readvised him of his rights under *Miranda* when the confrontational interrogation commenced. For the reasons set forth in *Commonwealth* v. *Sirois*, 437 Mass. 845, 850 (2002), in which an identical claim was made and rejected, we conclude that the defendant's claim is without merit. We are satisfied that, having been given Miranda warnings just thirty

minutes before the point when the interview became (we shall assume, but do not decide) custodial, the defendant's knowing waiver at that earlier point remained valid, notwithstanding the change in the tenor of the questioning. See also *Commonwealth v. Edwards*, 420 Mass. 666, 671 (1995).

b. *Voluntariness of confession.* Based on the judge's subsidiary findings and the police officers' uncontested testimony at the hearing, it is clear that the officers' display to the defendant of the falsely labeled blank tape and empty file and MacDougall's concurrent question suggesting that the video captured the defendant at the scene, were intended to mislead the defendant into believing the Commonwealth had evidence against him it did not have. The use of such deception as a tactical device is disapproved, *Commonwealth v. Jackson*, 377 Mass. 319, 328 n.8 (1979) ("[W]e expressly disapprove of the tactics of making deliberate and intentionally false statements to suspects in an effort to obtain a statement"), and we have indicated that its use "casts instant doubt on whether a defendant's statement is voluntary." *Commonwealth v. Nero*, 14 Mass. App. Ct. 714, 716 (1982). That doubt, however, standing alone, does not in the particular circumstances of this case ripen into a conclusion that the defendant's statements were involuntary.

"In determining whether a waiver was made voluntarily, the court must examine the totality of the circumstances surrounding the making of the waiver." *Commonwealth v. Edwards*, 420 Mass. at 670. The motion judge properly considered all of the relevant factors when deciding the voluntariness of the defendant's incriminating statements. See *Commonwealth v. Selby*, 420 Mass. 656, 663 (1995) (relevant factors include promises or other inducements; conduct of defendant; defendant's age, education, intelligence and emotional stability; experience with criminal justice system; physical and mental condition; whether police or defendant initiated discussion of a deal or leniency; and details of the interrogation, including recitation of Miranda warnings). See also *Commonwealth v. Jones*, 439 Mass. 249, 257 (2003) ("Although the validity of a defendant's Miranda waiver and the voluntariness of his statements are separate inquires, we use a totality of the circum-

stances test for both"); *Commonwealth* v. *Scoggins*, 439 Mass. 571, 576-577 (2003). In the present circumstances, we are satisfied that the Commonwealth has established by proof beyond a reasonable doubt that the defendant's free will was not overborne by the tactics of the police during questioning.

c. *Other claims.* With respect to the defendant's other claims,[3] the motion judge found that the defendant had "never invoked his right to counsel during the April 10 interview." The judge concluded that "because [the defendant] never invoked his right to counsel or his right to remain silent . . . [t]he issue of whether and at what point the interview became custodial interrogation is . . . irrelevant with respect to analysis under *Miranda* requirements," and that the initial, valid waiver remained in effect. The motion judge also found that discussion as to whether the defendant might benefit from alcohol abuse counseling was not done in the context of any "deal" or offer of leniency; and the introduction to the defendant of Zipper as "working with the DA's office," was factually correct and "not part of a coercive atmosphere designed to elicit a confession from" the defendant. The judge determined that the defendant's claims that the police made threats to file complaints against him and his girlfriend and to take away their children if he did not confess were not credible. Finally, the judge found that the defendant had completed high school, had some technical training, and had some experience with police; and that on April 10, he did not appear to be confused, disoriented or intoxicated.

For the reasons earlier stated, the judge was entitled to credit the testimony of the police officers over that of the defendant, and the defendant's claims are thus without basis.

2. *Motion for required finding of not guilty.* The defendant claims that the trial judge improperly denied his motion for a required finding of not guilty because his confession was not properly corroborated. He asks that we expand upon the corroboration rule adopted in the case of *Commonwealth* v. *Forde*,

---

[3]The defendant claimed to have made a request for an attorney that was ignored; that police officers made an offer of leniency if he confessed; that police threatened to jail his fiancée as an accomplice and to take his children away if he did not cooperate; and that Zipper's introduction to him as someone who "worked with the DA's office," created a coercive atmosphere.

392 Mass. 453, 458 (1984) ("The corroboration rule requires only that there be some evidence, besides the confession, that the criminal act was committed by someone, that is, that the crime was real and not imaginary"), to now require that specific details of a confession must be proved. Cf. *United States* v. *Lopez-Alvarez*, 970 F.2d 583, 590 (9th Cir.), cert. denied, 506 U.S. 989 (1992) (corroboration must support essential facts admitted to justify jury inference of their truth).[4]

Although the *Forde* rule was reiterated, without modification, in *Commonwealth* v. *Morgan*, 422 Mass. 373, 378 (1996), in subsequent decisions, consideration whether evidence was sufficiently corroborative has included evidence of the details of a confession. In *Commonwealth* v. *Jackson*, 428 Mass. 455

---

[4]At least one commentator has suggested that "[c]orroboration is the key to erecting a standard of minimum reliability for confession evidence." Ofshe, The Decision to Confess Falsely: Rational Choice and Irrational Action, 74 Denv. U. L. Rev. 979, 1119 (1997). Whether a rule requiring that details of a confession be corroborated is adequate, without more, to prevent the admission of false or unreliable confessions, has been called into question. See Johnson, False Confessions and Fundamental Fairness: The Need for Electronic Recording of Custodial Interrogations, 6 B.U. Pub. Int. L.J. 719, 736-737 (1997); White, False Confessions and the Constitution: Safe-guards Against Untrustworthy Confessions, 32 Harv. C.R.-C.L. L. Rev. 105, 132 n.192 (1997). Ofshe couples his suggestion regarding corroboration of confessions with the proposal that mandatory taping of interrogations be adopted as a means to further improve interrogation practices. Ofshe, at 1120-1121. See also Westling, Something is Rotten in the Interrogation Room: Let's Try Video Oversight, 34 J. Marshall L. Rev. 537, 549-556 (2001); White, at 153-155; Johnson, at 744-750.

We are mindful of "the possibility that an innocent defendant, confronted with apparently irrefutable (but false) evidence of his guilt, might rationally conclude that he was about to be wrongfully convicted and give a false confession in an effort to salvage the situation." *Commonwealth* v. *Scoggins*, 439 Mass. 571, 576-577 (2003), citing, generally, Ofshe, *supra*. We therefore observe, once again — see, e.g., *Commonwealth* v. *Fryar*, 414 Mass. 732, 742 n.8 (1993), S.C., 425 Mass. 237, cert. denied, 522 U.S. 1033 (1997); *Commonwealth* v. *Groome*, 435 Mass. 201, 219 n.26 (2001) ("Police officials should be alert to the merits of recording custodial interrogations and be warned that the time may come when recording .in places of detention, at least, will be mandatory if a statement obtained during custodial interrogation is to be admissible," citing *Commonwealth* v. *Diaz*, 422 Mass. 269, 273 [1996]); *Commonwealth* v. *Scoggins*, *supra* at 577 n.4 — that many of the questions that recur with regularity on appeals alleging improper interrogation techniques could more easily be resolved if interrogations were videotaped or otherwise electronically recorded.

(1998), the court stated the rule as requiring "some evidence in addition to the confession," noting that this requirement was satisfied by testimony of a witness that he saw tangible evidence of the robbery and evidence, described as "sufficiently corroborative" that the defendant broke into the victim's apartment with a shotgun. *Id.* at 467. See, e.g., *Commonwealth* v. *Banister*, 428 Mass. 211, 213 (1998) (where the court observed that "[e]vidence found at the scene of the murder corroborated the details of the defendant's confession"); *Commonwealth* v. *Nieves*, 429 Mass. 763, 772 (1999) (photograph that depicted victim's body crouched in a closet, wrapped in a blanket with a sneaker placed on top of her, "corroborated the details of the defendant's confessions"); *Commonwealth* v. *Adams* 421 Mass. 289, 291 (1995) (corroboration of confession deemed "adequate" where supported by eyewitness testimony confirming details of defendant's confession).

However, even if corroboration of the details of a confession is required, the evidence that the fire was set in the house through the use of an accelerant and that only someone with a key to the recently changed lock on the front door could have gained entrance, satisfied this requirement. There was no error in the denial of his motion.

3. *Denial of request for instruction.* We reject the defendant's claim that the judge erred in denying his request for an instruction that the jury could convict the defendant of the charge of burning a building, G. L. c. 266, § 2. The defendant was charged with arson of a dwelling house under G. L. c. 266, § 1.[5] We are not persuaded by the defendant's argument, made without citation to relevant authority, that burning a building is a lesser included offense of burning a dwelling house.

Where two offenses each require proof of an element the other does not, neither is a lesser-included offense of the other.

[5]The pertinent portion of the first section provides: "Whoever wilfully and maliciously sets fire to, burns, or causes to be burned, or whoever aids, counsels or procures the burning of, a dwelling house, or a building adjoining or adjacent to a dwelling house, or a building by the burning whereof a dwelling house is burned, whether such dwelling house or other building is the property of himself or another" shall be punished by imprisonment in State prison for not more than twenty years or by a fine of not more than ten thousand dollars, or both.

See *Commonwealth* v. *Valliere*, 437 Mass. 366, 371 (2002); *Commonwealth* v. *Jones*, *ante* 157, 162 (2003). The charged offense required proof that a dwelling house was set on fire whereas c. 266, § 2, requires proof that fire was set to buildings or structures — "meeting house, church, courthouse, [etc.], or any building or structure or contents thereof, not included or described in the preceding section," that is, not including a dwelling house. *Ibid.* Further, the two offenses historically have not been treated as cognate crimes. See also *Commonwealth* v. *Hayden*, 150 Mass. 332, 333 (1889) ("The statutory offense of burning a dwelling-house does not include within itself the offense of burning a building which is not a dwelling-house"); *Commonwealth* v. *Smith*, 151 Mass. 491, 494 (1890); *Commonwealth* v. *Anolik*, 27 Mass. App. Ct. 701, 712 (1989) (discussing offenses defined by separate sections of c. 266, "each has one or more elements not common to the other. Under the *Morey*[6] standard they are distinct offenses . . ."). Since § 2 is not included within § 1, it would have been error for the judge to have charged the jury on the elements of § 1 as a lesser-included offense.

We also reject the defendant's further argument that the house at 109 Adams Street was not a "dwelling" because (as he argues in his brief) the evidence showed that it "was in such a state of dilapidation due to lack of maintenance that it was not habitable." Cf. *Commonwealth* v. *DeStefano*, 16 Mass. App. Ct. 208, 214-215 (1983) ("The words 'dwelling house' are defined by the statute as including 'all buildings used as dwellings such as apartment houses, tenement houses, . . . or other buildings where persons are domiciled.' It is not necessary to prove actual occupancy. There must, however, at least be proof that the structure in issue is capable of being occupied as a dwelling and domicile"). See *Commonwealth* v. *Anolik*, *supra* at 712 n.13 (evidence that there was electrical service to building and it contained furniture, kitchenware, and food at the time of the fire was sufficient to establish that it was a dwelling house as defined in G. L. c. 266, § 1). Here, there was evidence that the defendant lived at the address for twelve years and during the year preceding the fire his fiancée and children also lived with

---

[6]*Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871).

him there. The evidence that the house was not only capable of habitation but in fact had been occupied as a residence until just prior to the fire was sufficient to permit the jury to find that it was a dwelling house.

4. *Motion for new trial.* The defendant claims entitlement to a new trial because during trial he was impeached with a 1991 prior conviction for armed robbery that was vacated following the conclusion of the within trial for arson. The arson trial took place in June, 1999. At that time, the defendant, who had pleaded guilty to the 1991 armed robbery charge, had not yet moved to withdraw his plea. We do not agree that the conviction on the armed robbery charge was not a "final judgment," within the meaning of G. L. c. 233, § 21. *Wilson* v. *Honeywell, Inc.,* 409 Mass. 803, 808 (1991), which dealt with the District Court de novo system, is inapposite. Cf. *Commonwealth* v. *Bartos,* 57 Mass. App. Ct. 751, 754-756 (2003) (discussing cases holding that guilty plea constitutes conviction).

*Judgment affirmed.*

*Orders denying motion to suppress and motion for new trial are affirmed.*