## RUFUS DAVIS *vs.* WESTWOOD GROUP.[1]

Suffolk. March 8, 1995. - July 14, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & GREANEY, JJ.

*Negligence*, Duty to prevent harm, Proximate cause, One owning or controlling real estate, Duty to warn, Pedestrian, Use of way. *Agency*, Scope of authority or employment.

The ownership and use by a racetrack of land on both sides of a divided State highway did not give rise to a duty to provide safe passageway to pedestrians over the State highway by constructing a pedestrian bridge or installing traffic lights, where the racetrack did not fail to exercise reasonable care in the use of its land nor was there any condition on its land that created an unreasonable risk to users of the State highway. [742-744]

No duty of care arose to provide safe pedestrian passage over a State highway, by the construction of a pedestrian bridge or installation of traffic lights, on the part of a racetrack whose property was on both sides of the highway by reason of the racetrack's arranging for municipal police details to direct motor vehicle and pedestrian traffic at a crosswalk over the highway, which was undisputedly controlled and maintained by the Commonwealth. [744-746]

The voluntary undertaking of an abutter to a State highway to hire police officers to direct motor vehicle and pedestrian traffic did not encompass the undertaking of a broader duty to provide safe pedestrian passage by means of a pedestrian bridge or the installation of traffic lights over the highway. [746-747]

There was no basis for imputing vicarious liability for negligence to a party under agency principles, where the agent had been found not to be negligent by the jury in a tort action. [747-748]

CIVIL ACTION commenced in the Superior Court Department on March 9, 1984.

The case was tried before *Barbara J. Rouse*, J., and a motion for a new trial was heard by her.

[1]Doing business as Wonderland Greyhound Park.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Paul M. Moretti* (*Richard L. Neumeier* with him) for the defendant.

*Kevin M. Truland* for the plaintiff.

LIACOS, C.J. The plaintiff sustained serious injuries on March 11, 1982, when a van driven by Robert Allard struck him as he crossed Route 1A in Revere, outside the Wonderland Greyhound Park, an establishment owned and operated by the defendant, Westwood Group. The plaintiff commenced this negligence action against Westwood and several other defendants.[2] He alleged that Westwood (1) was negligent in failing to provide a pedestrian bridge over Route 1A or a traffic signal at the pedestrian crossing, and (2) was vicariously liable for the negligence of the Revere police officer in charge of traffic control. The Appeals Court reversed the judgment that the plaintiff had obtained against Westwood because the plaintiff's second theory was not tenable, and because the court could not ascertain which theory had been the basis of the jury's verdict.[3] *Davis* v. *Allard*, 37 Mass. App. Ct. 508 (1994). Westwood filed an application for further appellate review of the Appeals Court's conclusion that Westwood owed a duty to the plaintiff to construct a pedestrian bridge or otherwise make alterations to Route 1A, a State highway. We allowed Westwood's application and conclude that Westwood owed no such duty to the plaintiff.[4] We

---

[2]The plaintiff asserted negligence claims against Robert Allard, Edward Poulin (Allard's employer and owner of the van who also was a passenger in the van at the time of the accident), the city of Revere, and Trolley's Food and Spirits (a restaurant where Allard had spent time earlier that evening). Apparently the case against Trolley's was discontinued. Poulin, Revere, and Trolley's Food and Spirits are not parties to this appeal. Robert Allard did not seek further appellate review of the decision of the Appeals Court, *Davis* v. *Allard*, 37 Mass. App. Ct. 508 (1994). Hence, the issues pertaining to his appeal are not before us.

[3]The Appeals Court affirmed the judgment against Allard.

[4]The Appeals Court did not explicitly announce that Westwood owed a duty to the plaintiff to construct a pedestrian bridge or otherwise make alterations to Route 1A. However, the court's conclusion that an expert witness's testimony that Westwood should have erected a traffic light or

also conclude that Westwood cannot be vicariously liable for the police officer's conduct. Accordingly, we reverse the judgment against Westwood and direct entry of a judgment in its favor.

On March 11, 1982, the plaintiff and a friend went to the dog races at Wonderland Greyhound Park in Revere. They arrived shortly before the first race, which was scheduled for 8 P.M. The plaintiff parked his car in Wonderland's south parking lot, which is located across VFW Parkway, State Route 1A (Route 1A) from the track. The pair walked a short distance to the edge of the parking lot, where pedestrians would traverse a painted crosswalk in order to reach the track.

Route 1A is a multi-lane divided State highway running north and south. At this point, the highway has two lanes and a breakdown lane in each direction. Wonderland's south parking lot abutted the northbound lanes.[5] A median strip separated the north and south travel lanes in the area of the crosswalk. Patrons who parked in the south parking lot would assemble at the crosswalk and wait until it was safe to cross the highway. A Revere police officer in uniform on paid detail would walk out from the median strip into the northbound traffic and halt the traffic by hand signal. The patrons then would cross the highway, after which the officer would direct the traffic to resume and the officer would return to the median strip. The process would be repeated as subsequent groups of patrons assembled at the crosswalk. A sec-

---

constructed a pedestrian bridge was properly admitted, as well as its statement that this theory of liability was tenable, can be read as stating that Westwood had a duty to make alterations to the State highway. We note that in light of applicable statutes and procedures, the question more properly is whether Westwood had a duty to apply for a permit to make alterations to Route 1A in order to provide safe pedestrian passage across the State highway. See G. L. c. 81, § 21 (1992 ed.) ("no . . . obstruction or structure [shall be placed on State highway] or removed therefrom or changed without the written permit of the department").

[5]Wonderland's north parking lot is situated on the same side of Route 1A as the track.

ond officer similarly directed the traffic in the southbound lanes.

On the night in question, Revere police Officer Sabatino Falzarano directed the northbound traffic. Although Falzarano attempted to control the traffic, a van operated by the defendant Robert Allard, who was driving while under the influence of alcohol, drove past Falzarano and struck and injured the plaintiff, who was crossing the highway. After trial, a jury found Allard seventy-eight per cent responsible, Westwood thirteen per cent responsible, and the plaintiff nine per cent responsible.[6]

The plaintiff based his case against Westwood on two theories. First, he alleged that the system used for patron crossing of Route 1A from the south parking lot was intrinsically inadequate and contributed to the accident. In particular, the plaintiff contended that Westwood should have erected a traffic light or constructed a pedestrian bridge in order to provide safe pedestrian passage across Route 1A. Second, the plaintiff alleged that Officer Falzarano acted negligently and that Westwood was responsible for the consequences of the officer's negligence.

At trial, the plaintiff called civil engineer James D'Angelo to testify as an expert on the subject of Westwood's allegedly negligent failure to erect a traffic light or to build a pedestrian bridge.[7] In addressing whether the judge erred in allowing D'Angelo's testimony, the Appeals Court "put to one side the question whether [Westwood] was under a duty to make provision for safe passage of patrons over the highway, a public facility . . . [because Westwood] voluntarily undertook the task and was thus cast with a duty to exercise due care in carrying it out." *Davis* v. *Allard, supra* at 512.

Before liability for negligence can be imposed, there must first be a legal duty owed by the defendant to the plaintiff,

---

[6]The jury found Revere and Edward Poulin not responsible. The jury found total damages to be $247,200.

[7]In light of our conclusion that Westwood had no duty to make alterations to the State highway or to apply for a permit to make alterations, we need not address the propriety of admitting D'Angelo's expert testimony.

and a breach of that duty proximately resulting in the injury. See *O'Gorman* v. *Antonio Rubinaccio & Sons*, 408 Mass. 758, 760 (1990); *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989). Whether such a duty exists is a question of law. *Wallace* v. *Wilson*, 411 Mass. 8, 12 (1991), citing *Yakubowicz* v. *Paramount Pictures Corp.*, *supra.* In determining whether the defendant had a duty to be careful, we look to existing social values and customs, as well as to appropriate social policy. *Yakubowicz* v. *Paramount Pictures Corp.*, *supra.* See *Schofield* v. *Merrill*, 386 Mass. 244, 251 (1982).[8]

It is well established that an owner or possessor of land owes a common law duty of reasonable care to all lawful visitors. *Sullivan* v. *Brookline*, 416 Mass. 825, 827 (1994), citing *Mounsey* v. *Ellard*, 363 Mass. 693, 707 (1973). This duty includes an obligation to maintain the premises in reasonably safe condition and to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware.[9] *Thorson* v. *Mandell*, 402 Mass. 744, 747 (1988). *Toubiana* v. *Priestly*, 402 Mass. 84, 88 (1988). *Polak* v. *Whitney*, 21 Mass. App. Ct. 349, 351 (1985). Although a landowner or possessor typically is not held to any duty with respect to public highways adjacent to or crossing his land, he must exercise reasonable care in the use of his land so as not to injure a traveler on the highway. *Pritchard* v. *Mabrey*, 358 Mass. 137, 140 (1970).

In this case, Westwood did not fail to exercise reasonable care in the use of its land, nor was there any condition on its land that created an unreasonable risk to users of Route 1A. The mere fact that Westwood's facilities used land on both sides of Route 1A, without more, does not necessarily impose

---

[8]Westwood filed motions for a directed verdict and for judgment notwithstanding the verdict. In our view, the latter motion should have been allowed.

[9]If a risk is of such a nature that persons of ordinary intelligence would be aware of it, a landowner generally has no duty to warn of the risk. *Toubiana* v. *Priestly*, 402 Mass. 84, 89 (1988). *Young* v. *Atlantic Richfield Co.*, 400 Mass. 837, 842 (1987), cert. denied, 484 U.S. 1066 (1988).

on it the broad duty to provide safe passage over the State highway by erecting a traffic light or constructing a pedestrian bridge, or by applying for a permit to make such alterations. To hold that Westwood owed the plaintiff such a duty would significantly expand the scope of a landowner or possessor's duties with respect to adjacent public roads, and would make the line which cuts off landowner liability "nearly impossible to draw." See *Wofford* v. *Kennedy's 2nd St. Co.*, 649 S.W.2d 912, 914 (Mo. Ct. App. 1983). This we decline to do.[10]

Nevertheless, the plaintiff contends that Westwood had a duty to provide safe passage over Route 1A because it exercised actual control over the road at the site of the accident. Certainly a duty of care may arise from the right to control

---

[10]Although we have not specifically addressed the duty owed by a landowner to pedestrians crossing a State highway, a number of jurisdictions have held that a landowner's duty does not extend to public streets over which the landowner has no control. See, e.g., *Chouinard* v. *New Hampshire Speedway*, 829 F. Supp. 495, 503 (D.N.H. 1993) (defendant landowner owed no duty to plaintiff to guard against negligent acts of third-party tortfeasors on public way over which defendant had no control); *Owens* v. *Kings Supermarket*, 198 Cal. App. 3d 379, 388 (1988) (supermarket owed no duty to customer injured by negligence of third party in public street adjacent to supermarket premises); *State* v. *Flanigan*, 489 N.E.2d 1216, 1218-1219 (Ind. Ct. App. 1986) (owner of commercial premises adjacent to public highway generally owes no duty to patron injured when struck by automobile as patron was crossing or walking along highway); *Swett* v. *Algonquin*, 169 Ill. App. 3d 78, 90 (1988) (restaurant owed plaintiffs no duty to protect them from motorists traveling on public roadway located between restaurant and its parking lot); *MacGrath* v. *Levin Properties*, 256 N.J. Super. 247, 250-251 (App. Div. 1992) (property owner, who is otherwise without fault, owes no duty to pedestrians injured on abutting highway or sidewalk that is part of public domain); *Laumann* v. *Plakakis*, 84 N.C. App. 131, 133 (1987) (defendant had no duty to provide for crossing guard, warning lights or other traffic control devices on city street); *Ferreira* v. *Strack*, 636 A.2d 682, 686 (R.I. 1994) (owner of premises abutting public way has no duty to control traffic on a public way); *Mahle* v. *Wilson*, 283 S.C. 486, 488 (Ct. App. 1984) (defendant owed no duty to plaintiff to request that highway department post speed limit signs or furnish a pedestrian crosswalk in front of its place of business); *Dixon* v. *Houston Raceway Park, Inc.*, 874 S.W.2d 760, 763 (Tex. Ct. App. 1994) (defendant owed no legal duty to person killed in motor vehicle accident that occurred on public road outside defendant's control).

land, even where the person held to such a duty does not own the land in question. *Underhill* v. *Shactman*, 337 Mass. 730, 733 (1958). See *Anthony H.* v. *John G.*, 415 Mass. 196, 200 (1993), citing *Mounsey* v. *Ellard*, *supra* at 707-708. Although Westwood arranged for municipal police details at the pedestrian crosswalk, we do not believe that this action amounts to such "control" over the road that we should impose on Westwood the broad duty to provide safe pedestrian passage across Route 1A by altering a State highway, or by applying for a permit to do so.

Indeed, it is clear that the Commonwealth controls Route 1A. Route 1A is a State highway owned and maintained by the Commonwealth. See G. L. c. 81, § 13 (1992 ed.) ("State highways shall be maintained and kept in good repair and condition by the department [of highways] at the expense of the commonwealth"). For example, the Commonwealth, through the department of highways, designs and constructs State highways such as Route 1A. See G. L. c. 81, § 5. The department, at the Commonwealth's expense, is responsible for snow and ice removal on State highways, for keeping State highways reasonably clear of brush, and for performing other maintenance duties. G. L. c. 81, §§ 13 & 19. The department constructs sidewalks along those sections of State highways as it determines public convenience and necessity require. G. L. c. 81, § 20. It is authorized to install lighting to illuminate State highways. G. L. c. 81, § 20A. In addition, the department oversees a permit process for approving and overseeing alterations to State highways. See G. L. c. 81, § 21. As part of this process, the department has authority to require certain persons to install and pay for standard traffic control devices or other highway improvements to facilitate safe and efficient traffic flow, or to make these improvements itself at the expense of those persons. G. L. c. 81, § 21.

The Commonwealth's undisputed control over Route 1A undermines the plaintiff's attempts to impose on Westwood a duty to provide safe pedestrian passage over the State highway. Westwood's hiring of uniformed officers to direct motor vehicle and pedestrian traffic when races occurred does not

amount to such control over Route 1A that imposing this broad duty is warranted. We do not believe that any significant public interest would be served by compelling private landowners such as Westwood to assume the Commonwealth's responsibilities with respect to improving State highways for traffic safety purposes.[11]

The plaintiff also alleges that Westwood voluntarily assumed a duty to provide safe passage to its patrons from the south parking lot over the State highway and that "the precise scope of the duty gratuitously assumed was for the jury to determine." We disagree.

It is an established principle that a duty voluntarily assumed must be discharged with due care. *Mullins* v. *Pine Manor College*, 389 Mass. 47, 52 (1983), citing *Black* v. *New York, N.H. & H.R.R.*, 193 Mass. 448 (1907). "If a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of the negligent performance of his undertaking." *Thorson* v. *Mandell*, 402 Mass. 744, 748 (1988).[12]

In this case, Westwood voluntarily undertook one specific task, that of hiring police officers to direct pedestrians across Route 1A between the south parking lot and the track. Thus,

---

[11]We note that at trial it was undisputed that the Commonwealth had not recommended the construction of a traffic signal or pedestrian bridge at the crosswalk where the accident occurred.

[12]We recognize the "good Samaritan" principles articulated in Restatement (Second) of Torts § 323 (1965). See *Thorson* v. *Mandell*, 402 Mass. 744, 748 (1988), citing *Mullins* v. *Pine Manor College*, 389 Mass. 47, 52-53 (1983). Section 323 provides:

> "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

> "(a) his failure to exercise such care increases the risk of such harm, or

> "(b) the harm is suffered because of the other's reliance upon the undertaking."

Westwood was cast with a duty to exercise due care in carrying out the particular task of hiring those officers.

The plaintiff, however, contends that by hiring municipal police officers to direct traffic, Westwood undertook a much broader duty — that of providing safe pedestrian passage across Route 1A, a State highway, by erecting a traffic light or building a pedestrian bridge. In our view, sound social policy would not be advanced by a rule which would impose such an expansive duty on Westwood, merely because it voluntarily undertook the discrete task of hiring municipal police officers to direct traffic during race times. See *Andrade* v. *Baptiste*, 411 Mass. 560, 565 (1992). As noted above, the power to control Route 1A and regulate traffic thereon lies with the State, and not with nongovernmental parties such as Westwood. Westwood's hiring of municipal police officers to direct traffic at the crosswalk in question does not affect this principle. See *Ferreira* v. *Strack*, 636 A.2d 682, 688 (R.I. 1994) (because "any attempt on the part of a private person gratuitously to assume control of a public highway would be contra to public policy . . . no such duty [can] be assumed by an abutting landowner"). In addition, Westwood's hiring of Revere police officers did not create an unreasonable risk of harm to the users of Route 1A that would give rise to a duty to protect the plaintiff from the negligent acts of Robert Allard, a third party over whom Westwood had no control, by altering or seeking to alter the State highway. To impose such a broad duty on Westwood would be "unreasonably onerous," see *Thorson* v. *Mandell*, *supra* at 748, because it would make Westwood an insurer of the safety of travelers and pedestrians on a State-owned and State-controlled highway.[13]

The plaintiff further claims that Officer Falzarano acted negligently and that Westwood was responsible for the conse-

---

[13]In addition, to impose on Westwood this broad duty of altering a State highway would penalize Westwood for having arranged and paid for municipal police officers to monitor the pedestrian crossing. We conclude also that the jury verdict that the city of Revere was not negligent supports the conclusion that Westwood performed this duty with due care.

quences of the officer's alleged negligence. We need only discuss this issue briefly. At trial, the city of Revere's admission that Officer Falzarano was acting within the scope of his employment for the city when he directed traffic on Route 1A on the evening of the accident was read into evidence. The judge instructed the jury that, because Falzarano was acting within the scope of his employment for the city, the city would be vicariously liable for any negligence on the officer's part that proximately caused the plaintiff's injuries. The jury returned a verdict in favor of the city. From this verdict, we can conclude that the jurors did not find Officer Falzarano negligent. See *O'Connor* v. *Raymark Indus., Inc.*, 401 Mass. 586, 590 (1988) ("we presume that the jury followed the judge's instructions"). Hence, even if we were to assume that Officer Falzarano was Westwood's agent, there is no ground for attributing to Westwood vicarious liability for his acts.[14]

Because we conclude that Westwood owed no duty to the plaintiff to provide safe passage across Route 1A by altering or seeking to alter the State highway, and because we conclude that Westwood cannot be held vicariously liable for Officer Falzarano's acts, we reverse the judgment against Westwood, and order entry of judgment for Westwood.

*So ordered.*

---

[14]We note, however, that we are content with the Appeals Court's conclusion that Falzarano was an independent contractor rather than an employee of Westwood, and that therefore vicarious liability was not a tenable ground for a judgment against Westwood.