Miller *v.* Fickett.

JEFFREY MILLER & another[1] *vs.* DARRYL FICKETT & others.[2]

No. 98-P-1120.

Plymouth. December 6, 1999. - February 25, 2000.

Present: PERRETTA, GILLERMAN, & LAURENCE, JJ.

Further appellate review granted, 432 Mass. 1101 (2000).

*Negligence,* Real estate broker, Duty to warn, Assumption of risk, Child. *Dog.*

Where defendant real estate brokers fulfilled their duty to warn of a dangerous
    condition on a property being shown, namely, the presence of vicious
    dogs, the plaintiffs, prospective purchasers, assumed the attendant risks to
    themselves and their four year old daughter by entering the property;
    further, the broker's instructions to the dog owner to restrain the dogs by
    confining them were adequate to assure the safety of the child, whose
    injuries were caused by the negligence of the parents in releasing the dogs
    from confinement. [655-657]

CIVIL ACTION commenced in the Superior Court Department on
March 27, 1997.

The case was heard by *Suzanne DelVecchio,* J., on a motion
for summary judgment.

*William McElligott* for the plaintiffs.

*James J. D'Ambrose* for Suanne DeFrancesco & another.

GILLERMAN, J. The plaintiffs appeal from a separate and final
(summary) judgment entered in favor of Remax New Horizons
(Remax) and Suanne DeFrancesco on a twenty-five count
complaint.[3] We affirm.

DeFrancesco and her principal, Remax, were acting as sales
agents for Darryl and Kathleen Fickett, the owners of a house

---

[1]Dorothy Miller, individually and as mother and next friend of Rachel
Miller.

[2]Kathleen Fickett, Remax New Horizons, Suanne DeFrancesco, and Denise
Eason.

[3]The claims against Darryl Fickett and Kathleen Fickett were separately
decided by summary judgment in favor of the defendants. The judgment has
been affirmed in a memorandum of opinion, *post* 1122 (2000), issued pursuant
to Appeals Court Rule 1:28, as amended, 46 Mass. App. Ct. 1001 (1998).

in Plympton which was being offered for sale. The plaintiffs were interested in the property and had been invited to view the house.

DeFrancesco and Remax, as brokers for the owners showing the house to prospective buyers, owed the potential buyers who visited the premises the common-law duty to warn such persons of any unreasonable danger of which Remax or DeFrancesco were aware.[4] See *Hopkins* v. *Fox & Lazo Realtors*, 132 N.J. 426, 448 (1993) (real estate broker has duty to ensure, through reasonable inspection and warning, the safety of prospective buyers and visitors who tour an open house). Compare *Davis* v. *Westwood Group*, 420 Mass. 739, 743 & n.9 (1995) (owners and possessors of land owe a common-law duty of reasonable care to all lawful visitors, including an obligation to maintain the premises in reasonably safe condition and to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware; however, this duty to warn does not extend to risks which are "of such a nature that persons of ordinary intelligence would be aware of it").

The purpose of warning of nonobvious or unreasonable dangers to persons in the position of the plaintiffs is to provide such persons with the opportunity to "decide intelligently whether or not to accept the invitation, . . . [or, alternatively, to] protect himself against the danger if he does accept it." Restatement (Second) of Torts § 343 comment b (1965). See Restatement (Third) of Torts: General Principles § 16 comment b (Discussion Draft 1999) (a warning "benefits the person by enabling the person to make an informed choice").

The affidavit of Jeffrey Miller, father of four year old Rachel Miller, the victim, filed in opposition to the motion for summary judgment, acknowledged that DeFrancesco told him that "there were dangerous and vicious dogs on the property and that she had had prior showings [of the property] where there were problems. She also stated that she was nervous about the dogs herself. [T]here was a dangerous condition [at the premises]."[5]

Miller's position at trial and here is that, in these circum-

---

[4]We express no opinion as to whether the duty to warn of known dangers is the full measure of a broker's duty to prospective buyers.

[5]The affidavit of DeFrancesco states that she told the tenant of the property to be sure that the dogs the tenant owned were "either in the cellar or tied in the backyard." Miller's affidavit does not assert that he was told of De-

stances, "[a]rrangements should have been made for the dogs to be removed from the property at the time of the showing." The plaintiffs mistake the duty of the defendants. The defendants were obliged to warn the plaintiffs of the dangerous condition of the property because of the presence of vicious dogs, but, as noted above, the purpose of that warning was to bring to the attention of the plaintiffs that they must choose between entering the premises and protecting themselves, or not entering at all. The plaintiffs chose to enter the house (ignoring their own advice that safety required the removal of the dogs from the premises), thereby assuming the attendant risks, of which they had been warned, to themselves and their four year old daughter Rachel.

Miller's affidavit continued. Shortly after their entry into the house, they were confronted directly by one of the dogs: their attempt to see the basement area was blocked by a male Dalmatian. The plaintiffs pressed on. The *tenant* told Miller to open the "back door" to let the dogs out into the yard. Miller complied. After seeing the basement (presumably), the plaintiffs left the house through the "back door" — presumably the same "back door" through which the dogs had been let out by Miller's own hand — their purpose being, according to Miller, "to see the porch and backyard."[6]

A reasonable person of ordinary intelligence would have known that by proceeding into the backyard the plaintiffs were exposing themselves — and in particular four year old Rachel, whose movements could be expected to be unpredictable, see *Scott* v. *Thompson*, 5 Mass. App. Ct. 372, 375 (1977) — to the risk of an attack by a "vicious" dog, and no warning by anybody of that obvious risk was necessary. See *Davis* v. *Westwood Group*, 420 Mass. at 743 n.9.

We conclude that the judgment must be affirmed as to the plaintiffs Jeffrey Miller and Dorothy Miller, individually.

The negligent conduct of the parents may not be imputed to their daughter Rachel. See G. L. c. 231, § 85D. As to Rachel, then, a mere verbal warning might well be inadequate to protect

Francesco's instructions to the tenant, and DeFrancesco's affidavit does not include the assertion that she told the Millers about the instructions she had given to the tenant. Thus we assume that the Millers did not know what DeFrancesco instructed the tenant to do.

[6]Miller's affidavit is silent as to what precautions, if any, he took to protect his four year old daughter.

a four year old child against a known danger. See Prosser & Keeton, Torts § 32, at 179 (5th ed. 1984) (children "obviously cannot, in all instances, be held to the same standard as adults, because they often cannot in fact meet it, nor are they generally expected to"). However, the uncontradicted affidavit of De-Francesco, see note 5, *supra*, states that she told the tenant and owner of the dogs to be sure that the dogs were "either in the cellar or tied in the backyard." Those instructions were adequate to assure the safety of Rachel. Moreover, there was no evidence that DeFrancesco was aware of Miller's releasing the dogs out the back door. The injuries Rachel suffered were not caused by any breach of the duty of care by the broker; they were caused by the conduct of Jeffrey Miller who insisted first on viewing the house notwithstanding the clear warning of danger, second, on descending to the basement knowing the vicious dogs were there, and third, on going out the back door — through which he had let the dogs out — to see the porch and backyard.

*Judgment affirmed.*