Brassard, J.
The plaintiff, Susan P. Sheehan, filed a three-count complaint on August 14, 2000, individually and as administratrix of the estate of her daughter, Alison. Defendant John Cash now moves for summary judgment on Count III of the complaint, which alleges that he was negligent in the death of Alison Sheehan. A hearing was held on the motion on December 9, 2004. For the following reasons, Cash’s motion for summary judgment is ALLOWED.
BACKGROUND
In October of 1999, the defendants John Cash (“Cash”) and Barry Brown (“Brown”) lived in a three-bedroom apartment with a third man, Scott Bevington (“Bevington”). The apartment was located at 156 Pleasant Street in Cambridge, Massachusetts. Bevington’s bedroom was on the first floor, the living areas were on the second floor, and Cash and Brown each had a bedroom on the third floor.
On October 8, 1999, Cash returned home from work at approximately 11:00 p.m. He did not see anyone when he got home, and went to bed soon after arriving, because he had to be up early for work the next day. Cash was employed as a training manager at the Naked Fish Restaurant in Westboro, Massachusetts. He worked twelve-hour shifts, from 9:00 a.m. to 9:00 p.m. In order to arrive at work on time, he left the apartment at 7:00 a.m., riding the MBTA to Alewife Station where he met a colleague who gave him a ride to Westboro. On October 9, 1999, Cash woke up at approximately 6:30 a.m. From Brown’s room, Cash overheard Brown tell a woman to be quiet, so as not to wake his roommates. Cash did not know who Brown was speaking to, and did not see anyone before he left for work.
Cash returned home from work at approximately 11:00 p.m. on October 9, 1999, and went up to his bedroom approximately fifteen minutes later. Noticing that Brown was in his room, Cash stopped in to say hello. He noticed someone was sleeping on Brown’s bed, but did not recognize the person. Cash and Brown spoke for a few minutes. Brown appeared lucid, and did not seem to be under the influence of alcohol or drugs. Cash looked again at the person on the bed, and felt that something was wrong. He recognized her as Alison Sheehan (“Sheehan”), whom he had met socially on two occasions in August or September of 1999. He looked more closely and saw that Sheehan’s lips were blue, her breaths were shallow, her face was cold, and she did not move when he shook her. Cash “panicked, ” believing that she needed urgent medical care.
Believing that they could drive to the hospital as quickly as an ambulance, Brown carried Sheehan downstairs while Cash found the keys to her car. Cash drove the car to Mount Auburn Hospital, with Brown and Sheehan as passengers. They left the apartment between 11:00-11:15 p.m., and arrived at the hospital between 11:15-11:30 p.m. Cash parked the car in a space designated for the emergency room, and then he left. He started walking home, leaving Brown to take *580 Sheehan inside. He did not see Brown get Sheehan out of the car, or take her into the hospital. Brown testified at deposition that he immediately went inside and sought help bringing Sheehan into the hospital.[3]
Sheehan died four days later, on October 13, 1999, from an overdose of heroin and cocaine. The Cambridge Police Department investigated her death. Cash and Brown cooperated with the investigation, consenting to be interviewed and to a search of their apartment. No drugs were discovered at the apartment, and no criminal charges were filed against Cash or Brown.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c).; Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 360 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The moving party defendant, Cash, asserts that he is entitled to summary judgment because (1) he did not owe a duty of care to the decedent, Alison Sheehan, and (2) he did not breach any duty that he did owe her. The plaintiff contends that Cash did owe a duty of care to Sheehan, particularly once he undertook to render assistance, and that breach is a question of fact to be decided by a jury. Because no jury could reasonably find that Cash breached a duty to Sheehan, the motion for summary judgment will be allowed.
I. Cash Assumed a Duty to Sheehan
The plaintiff asserts that Cash assumed a duty to Sheehan when he decided to bring her to the hospital himself rather than call an ambulance.[4] When a person assumes a duty, he must perform it non-negligently. See Howard J. Alperin, Lawrence D. Shubow & Roland F. Chase, Summary of Basic Law §20.201, at note 1 (1996 & Supp. 2004). Massachusetts law distinguishes among assumed duties, differentiating those that are “voluntary” and those that are “gratuitous.”[5] Id. The distinction between these is not obvious. “[0]ne would suppose an undertaking to be voluntary in the absence of a contractual obligation, i.e., without consideration. Apparently an undertaking is voluntary but not gratuitous if it is ‘an indispensable part of a bundle of services’ for which consideration has been given, even though the undertaking in question has not been specifically contracted for.” Pierre v. United States, 741 F.Sup. 306, 309 (D.Mass 1990) (applying Massachusetts law). To illustrate, the decision by a college to provide specific security measures for students was voluntary, in light of the overall consideration paid by students to the college, Mullins v. Pine Manor College, 389 Mass. 47, 53 (1983), while one truck driver’s assistance to another truck driver in moving a trailer in order to make room for the doors to close, for no consideration, was a gratuitous undertaking. Bagely v. Burkholder, 337 Mass. 246, 249 (1958).
Different standards of care attach to the different undertakings. “It is an established principle that a duty voluntarily assumed must be discharged with due care.” Davis v. Westwood Group, 420 Mass. 739, 746 (1995), citing Mullins, 389 Mass, at 52. “If a person voluntarily assumes a duty or undertakes to render services to another that should have been seen as necessary for her protection, that person may be liable for harm caused because of negligent performance of his undertaking.” Davis, 420 Mass, at 746, quoting Thorson v. Mandell, 402 Mass. 744, 748 (1988). Where the undertaking is gratuitous, however, the standard of care is gross negligence. Wheatley v. Peirce, 354 Mass. 573, 575-76 (1968); Motta v. Mello, 338 Mass. 170, 172 (1958); Bagely, 337 Mass, at 249 (statingrule “when A enters upon a gratuitous undertaking for the benefit of B, the duty of care which A owes to B is only the duty to refrain from gross negligence”).[6]
Here Cash and Sheehan had no relationship giving rise to a duty of care. They had met socially on only a few occasions. There was no consideration offered for Cash’s assistance. Once Cash decided to render assistance to Sheehan, he gratuitously assumed a duty to her, and was required to render that assistance absent gross negligence.
II. Cash Fulfilled the Duty He Assumed
The plaintiff alleges that Cash breached his duty first by deciding to take Sheehan to the hospital by car rather than summoning an ambulance, and then by leaving her at the hospital before she received treatment or even went inside. The facts surrounding Alison Sheehan’s death are unfortunate and describe a tragedy for her family. However, there are no facts in the summary judgment record from which a juiy could conclude that Cash was grossly negligent.[7]
Cash returned from work on the evening of October 9,1999, to find his roommate’s guest in medical distress. He immediately took steps to get medical assistance for her. There is no evidence that the decision to transport Sheehan to the hospital by car rather than summon an ambulance delayed her care or worsened her condition. Cash delivered Sheehan and Brown to the emergency room at Mount Auburn Hospital. He made the reasonable assumption that Brown, who appeared lucid and sober, would assure that she received treatment. Even if there were evidence from which a jury could infer that Brown delayed seeking care for Sheehan, Cash’s actions in leaving them at the hospital were reasonable.
*581 Although summary judgment is generally disfavored in negligence cases, because of the inherently factual nature of the claims, see Luz v. Stop & Shop, Inc. of Peabody, 348 Mass. 198, 203 (1964), a motion may be allowed where the facts are clear and sufficient. Here the plaintiff will be unable to prove an element of her claim at trial, as no juiy could reasonably find that Cash acted with gross negligence, breaching a duty to Sheehan. He is entitled to judgment as a matter of law, and his motion for summary judgment will be allowed.
ORDER
For the foregoing reasons, the motion for summary judgment is ALLOWED.

The plaintiff cites to the fact that Sheehan’s hospital record allegedly recorded her admission time as 1:11 a.m. However, this record is not part of the summary judgment record. Though some paper purporting to be a hospital record was apparently shown to Cash at his deposition (Cash Depo. at pp. 78-82), that paper is not part of the summary judgment record. At best, the deposition testimony is inconclusive and does not constitute evidence. Additionally, the summary judgment record does not contain any explanation of the significance of the admission time. It is possible, even likely, that the admission time on the medical record refers to an administrative event, either the formalization of the paperwork, or the patient’s transfer from the emergency room to admission as a patient of the hospital.

The plaintiff seemed to argue in her papers that Cash had some duty to Sheehan in his capacity as Brown’s roommate, but then waived this argument at the hearing on this motion. Regardless, the position is without merit. The facts here are analogous to cases of social host liability. Where an intoxicated guest injures himself, the social host is not liable for those injuries. See Hamilton v. Ganias, 417 Mass. 666, 668 (1994) (“The reasons for establishing social host liability to a third person injured by the negligence of an intoxicated guest . . . simply do not apply to the claim of an intoxicated guest who injures himself"); Manning v. Nobile, 411 Mass. 382 (1991); Sampson v. MacDougall 60 Mass.App.Ct. 394 (2004).
Sheehan was an adult. There is no evidence in the summary judgment record that either defendant provided the narcotics to her, or assisted her in ingesting them. Even assuming that Cash would somehow have a duty to his roommate’s guest, this duty would not extend to harm she did to herself with drugs she provided and administered to herself.

Massachusetts law differs from the Restatement in this regard. Section 323 of the Restatement (Second) of Torts, “Negligent Performance of Undertaking to Render Services,’’ attaches the same duty of reasonable care to ”[o]ne who undertakes, gratuitously or for consideration, to render services to another.” Section 324, “Duty of One Who Takes Charge of Another Who is Helpless,” assigns a duty of reasonable care to one who undertakes to render aid to someone who is helpless.

This rule arose frequently in cases of liability for motor vehicle accidents, prior to the statutory reforms. Though it came to be identified as based on the host-guest relationship between the driver and passenger, the rule is one of general application, based on a broad principle. Wheatley v. Peirce, 354 Mass. 573, 576 (1968), citing Ruel v. Langelier, 299 Mass. 240, 242 (1938).

This is true even were the appropriate standard reasonable care, rather than gross negligence.