## BRIAN SULLIVAN *vs.* KIMBERLY RICH.[1]

No. 07-P-109.

Bristol. November 13, 2007. - December 28, 2007.

Present: GRASSO, DREBEN, & GREEN, JJ.

*Negligence,* Duty to prevent harm. *Executor and Administrator,* Proceedings commenced after death of decedent, Real estate of decedent.

An action for negligence brought against a decedent's estate did not survive the decedent's death, where the fall that caused the plaintiff's injuries did not occur until after the decedent's death, even though the fall was attributable to a dangerous condition on the decedent's property that was known to the decedent prior to his death. [17-20]

CIVIL ACTION commenced in the Superior Court Department on August 6, 2004.

The case was heard by *Gary A. Nickerson,* J.

*David O. de Abreu* for the plaintiff.

*John T. Murray* for the defendant.

GRASSO, J. We consider whether the estate of a decedent may be held liable in negligence for a dangerous condition on the decedent's property known to him prior to his death, when the accident that causes injury does not occur until after the decedent's death. We conclude that where the accident did not occur until after the decedent's death, no cause of action existed that might survive his death so as to render his estate liable.

1. *Background.* In July, 2000, Walter Rich purchased property at 231 Bishop Street in Attleboro in his name sole. He lived there with his wife, Kimberly Rich, and their young son, Christopher. On February 20, 2003, Walter died unexpectedly and intestate, leaving Kimberly and Christopher as his only heirs at law and next of kin. On June 27, 2003, Kimberly was appointed administratrix of Walter's estate.

[1]Individually and as administratrix of the estate of Walter Rich.

On July 13, 2003, Brian Sullivan, one of Kimberly's guests at a barbecue, sustained personal injuries when he suddenly fell into a hole as he walked by the garage to throw an empty soda can into a trash barrel. The hole, which was covered with a piece of wood and topped with dirt and leaves, was indistinguishable from the surrounding area. It contained a buried fifty-five gallon drum.

When and by whom the drum was buried is unclear, but the parties do not dispute that while he was alive, Walter knew of the dangerous condition that the hole posed. Walter and his friends spent much time repairing cars in the garage. Indeed, Walter and a friend had placed the wood over the hole rather than filling it in. Subsequently, dirt and leaves fell on the wood, obscuring it until Sullivan's fall.

Sullivan sued Walter's estate for the injuries he sustained in the fall. His complaint asserted that Kimberly, individually and as administratrix, "knew or should have known of the unreasonably dangerous condition and negligently failed to repair the hole and negligently failed to warn visitors to the premises of the condition." Following discovery, Kimberly moved for summary judgment. At the hearing on the motion, Sullivan conceded that Kimberly did not know and had no reason to know of the dangerous condition. He argued instead that Walter's estate was liable solely because Walter was negligent prior to his death. A judge granted the defendant summary judgment and Sullivan appeals.

2. *Discussion.* A property owner or occupier of land owes a duty of reasonable care to all lawful visitors. See *Mounsey* v. *Ellard*, 363 Mass. 693, 707-708 (1973). That duty is an obligation to maintain the premises in a reasonably safe condition and to warn visitors of any unreasonable dangers of which the landowner is aware or reasonably should be aware. See *Davis* v. *Westwood Group*, 420 Mass. 739, 743 (1995).

In the particular posture of this case, Sullivan makes no claim of negligence against Kimberly as Walter's heir at law and an owner of the property at the time of his accident.[2] See *Shrewsbury* v. *Murphy*, 333 Mass. 290, 292 (1955) (title to real estate

[2]Sullivan also asserted no claim against Christopher, the other heir at law and owner.

passes to heirs at law on death of owner, subject to rights of creditors and orders of Probate and Family Court). Nor does he claim against Kimberly as administratrix of Walter's estate on account of any alleged failure by her to maintain the property or warn during the period of estate administration. Indeed, Sullivan's concession that Kimberly neither knew nor had reason to know of the dangerous condition on the property would preclude her liability in negligence either individually (as owner) or in her representative capacity (as administratrix).

Instead, Sullivan seeks to hold Walter's estate liable on the theory that where the evil that men do lives after them, their estate should be accountable. Because Sullivan was injured as a result of a dangerous condition on the property of which Walter knew and which he failed to repair or warn of prior to his death, Walter's estate should be accountable for that negligence. Sullivan's proffered theory is seductively appealing, but legally flawed.

The flaw in Sullivan's argument is that negligence in a legal sense did not arise until Sullivan was injured by falling into the hole, which did not occur until four months after Walter's death. See *Riley* v. *Presnell*, 409 Mass. 239, 243 (1991) (as general rule, cause of action for personal injuries "accrues when the plaintiff is injured"). Negligence as a cause of action requires coalescence of the well-known elements of duty, breach, causation, and damages. See *Davis* v. *Westwood Group*, *supra* at 742-743. Under Sullivan's proffered theory, the duty of care that Walter had as a landowner to repair or warn of the dangerous condition would survive Walter's death and permit a cause of action in negligence notwithstanding the lack of such coalescence in Walter's lifetime. The judge did not err in concluding that there is no basis in law for maintaining such an action and that no such liability existed on the part of Walter's estate.

Even assuming the hole to be a dangerous condition that would ordinarily subject a landowner to liability in negligence for injuries sustained by foreseeable users of his property, no liability exists against Walter's estate on account of Walter's lapses because the accident that caused Sullivan's injuries occurred months after Walter's death. At common law, the death of a tortfeasor eliminated all causes of action against him. See *Martinelli* v. *Burke*, 298 Mass. 390, 392 (1937) ("[a] dead person cannot 'be liable,'

nor can a cause of action arise against a person who does not exist"). Statutes exist that modify the common-law rule of extinguishment and permit survival of certain causes of action. For example, G. L. c. 228, § 1, allows certain actions already pending at the time of the decedent's death to survive his death. Likewise, G. L. c. 230, § 1, provides, "An action which would have survived if commenced by or against the original party in his lifetime may be commenced and prosecuted by or against his executor or administrator."[3] However, Sullivan's action fits within neither statutory exception for survival of a cause of action. No action was pending at the time of Walter's death, see G. L. c. 228, § 1, and no action could have been brought against Walter during his lifetime, see G. L. c. 230, § 1, because Sullivan's accident did not occur and his cause of action did not arise until after Walter died.

Sullivan's inability to maintain an action against Walter's estate because of the common-law rule of extinguishment and the inapplicability of the statutory provisions that provide for survival of certain actions is but another way of expressing the fact that a cause of action for negligence requires that the duty, breach, causation, and damages arise before the death of the putative tortfeasor. Whether viewed from the vantage of absence of duty or lack of injury, the result is the same. Walter did not owe Sullivan a duty of care at the time of the accident because once he died, Walter could no longer correct the condition or warn others about it. Walter's duty of care, as with all other worldly cares, ceased with his death and does not extend beyond the grave. Likewise, no injury to Sullivan occurred until after Walter's death.

While not necessary to our decision, we note that our holding is consistent with the Restatement (Second) of Torts § 354 (1965), which espouses the position that a property owner who transfers title involuntarily, as through death, is not liable for subsequent injury due to dangerous conditions on the property of which the former owner knew and failed to disclose.[4] Moreover, nothing in the statute of limitations regarding the time within

---

[3]As to the time periods within which an action may be brought against an executor or administrator, see G. L. c. 197, §§ 9, 9A, discussed *infra.*

[4]Restatement (Second) of Torts § 354 comment b (1965) provides, "The

which a suit may be brought against an executor or administrator of an estate provides Sullivan with a basis for a cause of action against Walter's estate on account of an accident occurring after Walter's death. See G. L. c. 197, §§ 9, 9A.[5] A statute of limitations is a limitation on liability that defines the time period within which a cause of action may be brought. A statute of limitations does not create a cause of action that does not otherwise exist. See *McGuinness* v. *Cotter*, 412 Mass. 617, 621-622 (1992), quoting from *Klein* v. *Catalano*, 386 Mass. 701, 702 (1982) ("statute of limitations is a procedural measure which 'normally governs the time within which legal proceedings must be commenced after the cause of action accrues' "). As noted earlier, Sullivan's cause of action for negligence did not accrue until he was injured, which did not occur until after Walter's death.

*Judgment affirmed.*

---

rule [imposing ongoing liability on a former owner when he fails to disclose a dangerous condition of which he knows] applies only to voluntary transfers of the land inter vivos. It does not apply where the transfer is without voluntary action on the part of the transferor, as in the case of disseisin or eminent domain; nor does it apply to a transfer effective after death, as in the case of either testate or intestate succession."

Section 354 provides an exception to the more general rule of Restatement (Second) of Torts § 353 (1965), which would impose continuing liability on a vendor for injury sustained posttransfer when the vendor conceals or fails to disclose a known dangerous condition to a vendee who does not know of the condition.

[5]General Laws c. 197, § 9, as amended by St. 1989, c. 320, § 5, provides that "an executor or administrator shall not be held to answer to an action by a creditor of the deceased unless such action is commenced within one year after the date of death of the deceased." General Laws c. 197, § 9A, as amended by St. 1989, c. 329, § 6, tempers the general limitation provision by permitting an action for personal injuries or death to be commenced more than one year after the date of death of the deceased "provided that such action is commenced within three years next after the cause of action accrues and provided further that any judgment recovered in any action so brought may be satisfied only from the proceeds of a policy of insurance or bond, if any, and not from the general assets of the estate." See *Tae* v. *Tae*, 57 Mass. App. Ct. 297, 297 n.3 (2003) (permitting claim for personal injuries under the special limitations provisions of G. L. c. 197, § 9A, to be brought against deceased in his own name even though real party in interest is insurer).