Coven, J.
Summary judgment was entered for the defendants on the plaintiffs’ claims arising out of plaintiff Richard Bonnell’s (“Bonnell”)[3] fall on stairs alleged to be on property under the ownership or control of the defendants. This Dist./Mun. Cts. R. A. D. A., Rule 8A expedited appeal followed.
In March of 1985, the defendants purchased property identified as 24-26 Main Street in Milford, Massachusetts and continuously owned this property through December 16,2004, the date of the alleged accident. Located on the property are two connected buildings. The first building at 24 Main Street is situated along Main Street and consists of two commercial units. Data Frontiers, Bonnell’s employer, has occupied one of these units since 1998. The second building at 26 Main Street is located behind, and connected to, 24 Main Street. It has consisted of one first-floor commercial unit, occupied by Data Frontiers since 2001, one second-level residential unit, and one small office unit on the second floor. One of the defendants, John *113 Mazzone (“Mazzone”), maintained the small office for his business as an electrician. Mazzone has also served, essentially, as the property manager.
A parking lot, created in 2001, is in the rear of the property. A deeded right of way exists to the left of the buildings. A paved driveway is to the right of the buildings, but it does not provide vehicle access to the parking area. A dumpster, leased by Data Frontiers since 2001 when it also took occupancy of the rear building, is located in the rear-parking area. Data Frontiers employees could access the leased rear space only from the right side of the building.
In the early to mid-1990s, a former commercial tenant, a day care provider, erected a fence at the right-rear side of the property. During the same period of time, the residential tenant asked permission from Mazzone to cut an opening in the fence erected by the commercial tenant in order to create a garden behind the property. The tenant received permission, cut a section of the fence, hinged the section, and created a gate. The tenant also installed two steps, which consisted of two treads descending from the gate toward the then nonexisting rear-parking area. One of Data Frontiers’ employees described the stairs as “rickety.” The defendants did not have the property surveyed prior to the erection of the fence.
A footpath would bring a traveler from the rear-parking area to the steps. Separating the steps and the rear-parking area was a grade of rocky terrain and a retaining wall. Some of Data Frontiers’ employees referred to this as a “shortcut,” and one described the path of the shortcut as “soil and loose rock” with “footing [that] was poor.” Bonnell testified in his deposition that, during winter months, the stairs were treated and shoveled and, in other seasons, were kept clear of plant life, weeds, and trees.
In his deposition, Mazzone testified that he secured the gate shut when the tenant who built the gate moved because “it was not a good stairway,” and was unaware that Data Frontiers’ employees were using the gate. He also stated that, prior to learning of the alleged injury, he never checked the gate after he first secured it shut. Mazzone was aware that Data Frontiers’ employees used the rear-parking area.
A survey conducted in connection with this litigation indicated that the defendants’ property line bisects the paved driveway on the right of the second building and the fence and steps erected by the defendants’ tenants. The top tread of the “steps” is located on town land. The second tread is partially over town land and partially over the defendants’ land.
In 2002, Bonnell began working for Data Frontiers. He often parked in the rear-parking area and accessed the rear offices of Data Frontiers via the steps and gate. Otherwise, to access Data Frontiers’ rear office space, a person who parked in the rear-parking area would have needed to travel along the left side of the buildings at 24-26 Main Street, walk across the front of 24 Main Street, and then walk down the paved driveway along the right side of the building. It was also possible to access the business by walking around the end of the fence next to the right-hand side of the building. Bonnell used the steps and gate two to six times each weekday, and made use of the steps year round.
On December 16, 2004, Bonnell was asked to dispose of some trash in the dumpster located in the rear-parking area. As Bonnell stepped onto the top-stair tread, the steps shifted down to his right, perhaps an “inch or two,” causing him to lose balance, fall, and injure himself. In his deposition, Bonnell testified that the ground on *114 either side of the stairs had been snow covered, but that the steps were only wet, from what he believed to be melting snow. Bonnell did not observe any broken or rotted wood.
Prior to Bonnell’s accident, Mazzone did not receive any complaints about the condition of the stairs and took no action to maintain them. Nor had Bonnell, or any employee of Data Frontiers, complained to any of the defendants about the condition of the gate or steps prior to the alleged fall. In the late summer or early fall of 2005, Mazzone sealed the gate shut with a plank and screws.
1. Summary judgment is appropriate when the record shows that “there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Mass. R. Civ. P., Rule 56(c). See also DuPont v. Commissioner of Correction, 448 Mass. 389, 397 (2007). When a reasonable finder of fact could return a verdict for the nonmoving party, summary judgment is improper. See Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). In reviewing a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in his favor. Jupin v. Kask, 447 Mass. 141, 143 (2006), citing Coveney v. President & Trustees of the College of the Holy Cross, 388 Mass. 16, 17 (1983).
2. The defendants argue that the evidence fails to establish that the plaintiffs can prove the defendants’ ownership or control over the location of the alleged accident and, without this proof, cannot establish that the defendants owed any duty to them.
“An owner or possessor of land owes a common-law duty of reasonable care to all persons lawfully on the premises” (emphasis added). O’Sullivan v. Shaw, 431 Mass. 201, 204 (2000). This duty includes a duty to maintain the property. Id. The term “possessor of land” is defined in §328E of the RESTATEMENT (SECOND) OF TORTS (1965) as:
(a) a person who is in occupation of the land with intent to control it or
(b) a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it, or
(c) a person who is entitled to immediate occupation of the land, if no other person is in possession under Clauses (a) and (b).
The definition and comment to §328E make clear that the focus of the inquiry is not on whether there exists “rightful” possession. Rather, the issue is control. A person may not have a legal right to possession, but may still be deemed a “possessor” because of his exercise of control over the property. Mazzone’s act of securing the gate, both prior to the creation of the rear-parking area and after Bonnell’s accident, showed that intent to control.
In this case, a jury could find that the defendants exercised control over the land owned by the town of Milford. There is no dispute that the defendants permitted a tenant to construct a fence and another tenant to alter the fence for access to an area where the second tenant wanted to create a garden. It can be inferred from the permission they granted to these tenants that the defendants believed the property, later determined by a survey to belong to the town of Milford, was part of their land purchase and that they had control over its use.
Moreover, there exists evidence that Mazzone was aware of a danger posed by *115 the steps. As characterized by Mazzone, it “was not a good stairway.” Mazzone acknowledged that he took steps to secure the gate shut so as to prevent anyone from using the stairway. It may properly be inferred that Mazzone, as a reasonable property manager, should have become aware that the method he used had failed and that occupants of the premises were continuing to use the “shortcut” as a means of travel between the rear-parking area and the right-side driveway. This apparent use would have been particularly clear in winter months when the stairs were shoveled.
Apart from these considerations, even accepting what is undisputed — a portion of the stairs was erected over town property — the effect of this condition is that the defendants’ property was connected by a two-step staircase constructed, first, to benefit a former tenant and, later, to provide access to employees of the defendants’ commercial tenant. A reasonable person could infer that the defendants had knowledge of this latter benefit and that the law imposed on them a duty to maintain the stairway.
This case is unlike Davis v. Westwood Group, 420 Mass. 739 (1995), in which the Court declined to impose a duty on the owners of a race track either to erect traffic lights, or to construct a pedestrian bridge, so that patrons could safely pass over a state highway that bisected the owner’s property. The Court recognized, however, that control, and not ownership, was the focus of the inquiry into the existence of a legal duty, and that an owner, in some circumstances, may voluntarily assume a duty to maintain passage over a public way because of control over the public property. Id. at 744-745.
3. Having concluded that the defendants owed Bonnell a duty of care, we turn to the issue of whether they were relieved of that duty because the dangerous condition in question was open and obvious danger.[4] As to persons lawfully on the property he controls, a possessor of property does not have a duty to protect those person from dangerous conditions “that would be obvious to persons of average intelligence.” O’Sullivan, supra at 204. The open and obvious danger rule not only affects the duty to warn, but also “operates to negate the existence of a duty of care.” Id. at 206. The doctrine obviates all duties to a lawful visitor because “it is not reasonably foreseeable that a visitor exercising... reasonable care for his own safety would suffer injury from such blatant hazards.” Id. at 204.
On the record before us, it cannot be ruled, as matter of law, that the defect that allegedly caused Bonnell to injure himself was open and obvious. The stairs shifted down an “inch or two.” Having reviewed the pictures of the stairs and the portions of the motion hearing transcript provided to us on this appeal, we cannot state that a reasonably prudent person, with concern for his or her own safety, would objectively recognize that the stairs could shift and the structure would contemporaneously sink an “inch or two.” The travel path from the stairs to the parking area was, *116 arguably, an open and obvious danger. But the integrity of the stability of the stairs is not.
Judgment for the defendants is vacated, the allowance of the defendants’ summary judgment motion is reversed, and the case is returned to the Marlborough Division for trial.
So ordered.

 Pamela Bonnell, Richard Bonnell’s wife, has brought a claim for loss of consortium, one obviously dependent upon her husband’s proof of the defendants’ negligence.

 While issues of negligence are generally the province of the jury, “the existence [or nonexistence] of a duty is a question of law, and is thus an appropriate subject of summary judgment.” Jupin, supra at 146. This is because the duty of care is part of the plaintiff’s prima facie case, and a valid open and obvious danger defense precludes the plaintiff from establishing an essential element of his case.